OPINION
{¶ 1} Appellant, Constance Engelmann, appeals from the January 7, 2003 judgment entry, in which the Ashtabula County Court of Common Pleas granted the motions of appellee, James F. Engelmann, II, to adopt the mediation memorandum as the order of the court and for the modification of parental rights and responsibilities. Further, in that entry, the lower court designated appellee the primary residential parent and legal custodian of appellant and appellee's three children.
 {¶ 2} Appellant and appellee were married on August 21, 1993. Three children were born as issue of the marriage: James Eugene Engelmann, born October 19, 1994, Victor Nicholas Engelmann and David Michael Engelmann, who were both born on October 7, 1998. Appellant filed for divorce on January 8, 1999. On February 19, 1999, appellant was awarded temporary custody of the minor children and temporary child support in the amount of $42.06 per month per child. In a judgment entry dated December 8, 1999, the trial court granted the parties' divorce and designated appellant the residential parent of the three minor children. The court also ordered that appellee pay appellant child support in the amount of $500 per month and spousal support in the sum of $300 per month for thirty months. The divorce decree incorporated a shared parenting plan as to the issues of the care, control, placement, support and custodial responsibility of the children. Specifically, the shared parenting plan stated that:
 {¶ 3} "[Appellant and appellee] agree that for the present time, until July of 2001, the children shall reside during the week with [appellant] in Athens, Ohio so that her mother and other members of her extended family can provide childcare * * *. It is further agreed that within twelve (12) months of moving to Athens, [appellant] and the children shall be residing in a residence that is at least comparable in quality and location to the residence in which they were living in Ashtabula County. * * * At the end of twelve (12) months, if appellant has not been able to provide for the children according to this Plan, she agrees to relocate with the children to Ashtabula County. It is further agreed that [appellee] shall pay the costs of the relocation. * * *"
 {¶ 4} The divorce decree and shared parenting plan provided that any disputes which were of direct concern to their children would be attempted to be resolved through mediation.
 {¶ 5} At the end of the twelve month period contained in the shared parenting plan, appellant did not relocate to Ashtabula County, which resulted in a dispute. The parties participated in mediation, and the dispute was resolved by a "Memorandum of Understanding Modified Shared Parenting Plan."[1] It was signed by both appellant and appellee.[2] In that memorandum, appellant and appellee agreed that "the children [would] begin residing in Ashtabula County, Ohio no later than June 15, 2002."
 {¶ 6} On August 27, 2002, appellee filed a motion to adopt the mediation memorandum as the order of the court, a motion for modification of his parental rights and responsibilities, and a motion for judgment for unpaid debts. In his motion to adopt the mediation memorandum, appellee alleged that appellant failed to comply with the agreement. Appellee also indicated that the December 8, 1999 judgment entry be modified so as to name him the primary residential parent of the three minor children because it is in the best interests of the children. Lastly, appellee requested a judgment against appellant for certain financial obligations appellee has had to pay for appellant.
 {¶ 7} A hearing took place on October 15, 2002. At the hearing, appellee revealed that he was not in arrears for his child support or spousal support payments. He admitted that he has missed visitations with the children due to family illnesses and the weather. Appellant took the stand and related that she decided not to abide by the agreement because she felt that her children had developed a routine with her family and she did not want to change it. Specifically, she stated that she did not feel it was "necessary to disrupt the children's lives * * *. [James] has gone to school [in Athens] for his entire schooling so far, kindergarten through third. He does not want to leave his friends. He doesn't want to leave his family. He has been considered gifted in visual arts. He has all these great things going for him at school." She further indicated that she could not afford to relocate to Ashtabula County.
 {¶ 8} Appellant explained that the only reason she signed the mediation agreement was because she felt threatened by appellee. She indicated that the agreement was "shoved in [her] face in Wendy's parking lot," and that appellee would not have been very happy if she did not sign it. She claimed that appellee "would have been screaming using profanity in front of the kids again, chasing the car down. [She's] afraid of it [and does not] like it around [her] children either."
 {¶ 9} Additionally, appellant testified that appellee should not be designated residential parent. She related that she did not think appellee was a good father because "[h]e doesn't give them their medication when he's supposed to give them their medication causing them to become more ill." She also stated that appellee did not have "any real clue of what's going on with his kids."
 {¶ 10} In a judgment entry dated January 7, 2003, the trial court granted appellee's motions to adopt the mediation memorandum as the order of the court and for the modification of parental rights and responsibilities. The trial court further ordered that appellee be designated the primary residential parent and legal custodian of the minor children. Appellee was also rendered judgment against appellant in the amount of $3,250 for unpaid debts. Appellant timely filed the instant appeal and now assigns the following as error:
 {¶ 11} "[1.] [Appellant] alleges that the [t]rial [c]ourt erred in granting [appellee's] [m]otion to [a]dopt [m]ediation [m]emorandum as [o]rder of [c]ourt as against the manifest weight of the evidence.
 {¶ 12} "[2.] [Appellant] alleges that the [t]rial [c]ourt erred in granting [appellee's] [m]otion [f]or [m]odification of [p]arental [r]ights and [r]esponsibilities as against the manifest weight of the evidence.
 {¶ 13} "[3.] The [t]rial [c]ourt did not consider all of the factors required under Ohio Revised Code Section 3109.04 when making the ruling on [a]ppellee's [m]otion [f]or [m]odification of [a]llocation of [p]arental [r]ights and [r]esponsibilities."
 {¶ 14} Under the first assignment of error, appellant alleges that the trial court's determination that appellee's motion to adopt the mediation memorandum as the order of the court was against the manifest weight of the evidence.
 {¶ 15} A judgment supported by some competent, credible evidence will not be reversed by a reviewing court as being against the manifest weight of the evidence. C.E. Morris Co. v.Foley Constr. Co. (1978), 54 Ohio St.2d 279, 280. Further, R.C.3109.04(A) states that:
 {¶ 16} "In any divorce * * * proceeding and in any proceeding pertaining to the allocation of parental rights and responsibilities for the care of a child, upon hearing the testimony of either or both parents and considering any mediation report filed pursuant to section 3109.052 of the Revised Code and in accordance with sections 3109.21 to 3109.36 of the Revised Code, the court shall allocate the parental rights and responsibilities for the care of the minor children of the marriage. Subject to division (D)(2) of this section, the courtmay allocate the parental rights and responsibilities for thecare of the children in either of the following ways:
 {¶ 17} "(1) If neither parent files a pleading or motion in accordance with division (G) of this section, if at least one parent files a pleading or motion under that division but no parent who filed a pleading or motion under that division also files a plan for shared parenting, or if at least one parent files both a pleading or motion and a shared parenting plan under that division but no plan for shared parenting is in the best interest of the children, the court, in a manner consistent withthe best interest of the children, shall allocate the parentalrights and responsibilities for the care of the childrenprimarily to one of the parents, designate that parent as theresidential parent and the legal custodian of the child, and divide between the parents the other rights and responsibilities for the care of the children, including, but not limited to, the responsibility to provide support for the children and the right of the parent who is not the residential parent to have continuing contact with the children." (Emphasis added.)
 {¶ 18} Although mediation is a non-binding process, an agreement reached through mediation is as enforceable as any contractual agreement. Jagusch v. Jagusch, 9th Dist. No. 02CA0036-M, 2003-Ohio-243, at ¶ 8, citing Forysiak v. LairdMarine and Mfg. (Oct. 19, 2001), 6th Dist. No. OT-00-049. See, also, Oliver Design Group v. Westside Deutscher Frauen-Verein, 8th Dist. No. 81120, 2002-Ohio-7066, at ¶ 12, fn. 2 (stating that mediation is only binding if the parties reach an agreement). Hence, the trial court should interpret the agreement to carry out the parties' intent, which is presumed to reside in the language contained in the agreement. Jagusch, supra, at ¶ 8. The words in the agreement will be given their plain and ordinary meaning unless doing so would manifest an absurd result or another meaning is evident from the face or contents of the agreement. Shifrin v. Forest City Ent. Inc. (1992),64 Ohio St.3d 635, 638.
 {¶ 19} In this case, the agreement between the parties, as memorialized by the mediator, clearly provided for a binding resolution. There was evidence presented at the hearing that both appellant and appellee were caring parents to the children. There was no evidence that either parent abused, mistreated or neglected the children.
 {¶ 20} Further, appellant and appellee agreed and both signed an agreement that appellant would relocate to Ashtabula County no later than June 15, 2002. However, appellant failed to abide by the terms of the agreement. At the hearing, appellant admitted that she signed the agreement and acknowledged she was supposed to relocate to Ashtabula County. Even though she did not want to uproot herself and the children from Athens for various reasons, instead of going through the courts, she decided to take the matter into her own hands.
 {¶ 21} In addition, there was no credible evidence that appellant was coerced in any way into making her agreements with appellee. Likewise, there was no evidence that appellee was not a fit parent custodian of the children. Instead, appellant has attempted to gain a tactical advantage over appellant by entering into contracts with him concerning the children and then arbitrarily refusing to comply with them.
 {¶ 22} Here, the January 7, 2003 entry encompassed the results of the mediation effort of the parties. The record contains evidence of the mediation memorandum which was signed by both parties. Although appellant claims that she was coerced to sign the agreement, and she alluded that she was scared of appellee, there was no testimony presented that she ever filed a temporary restraining order against appellee or that she voiced her fears to anyone. Therefore, it is our position that the trial court did not commit error when it adopted the mediation memorandum as the order of the court. We conclude that the trial court's findings were supported by sufficient, competent, credible evidence and were not against the manifest weight of the evidence. The trial court did not err in enforcing the settlement agreement and adopting it as the order of the court. This court reiterates that the results of mediation are not binding, but we are restating that the shared parenting provision included in the signed settlement agreement of the parties, which was adopted by the trial court and integrated into the decree, is binding absent fraud, misrepresentation, etc. Hence, even though the parties entered into mediation, the trial court did not order them to adopt the results of the mediation. Appellant and appellee voluntarily agreed to the results of mediation. Appellant's first assignment of error lacks merit.
 {¶ 23} Appellant's second and third assignments of error are interrelated and will be addressed in a consolidated manner. In the second assignment of error, appellant asserts that the trial court erred in granting appellee's motion for the modification of the parental rights and responsibilities and that the modification was against the manifest weight of the evidence. For her third assignment of error, appellant contends that the trial court erred in not considering R.C. 3109.04 when ruling on appellee's motion for the modification of the parental rights and responsibilities.
 {¶ 24} In matters relating to the allocation of parental rights and responsibilities for the care of minor children, the trial court is vested with broad discretion. Miller v. Miller
(1988), 37 Ohio St.3d 71, 74. A trial court's decision regarding these issues is subject to reversal only upon a demonstration of an abuse of that discretion. Masters v. Masters (1994),69 Ohio St.3d 83, 85. An abuse of discretion connotes more than an error of law or judgment, it implies that the court's attitude is unreasonable, arbitrary or unconscionable. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 25} "When applying an abuse-of-discretion standard, a reviewing court is not free merely to substitute its judgment for that of the trial court. * * * This highly deferential standard of review rests on the premise that the trial judge is in the best position to determine the credibility of witnesses because he or she is able to observe their demeanor, gestures and attitude. This is especially true in a child custody case, since there may be much that is evident in the parties' demeanor and attitude that does not translate well to the record." In reL.S., 152 Ohio App.3d 500, 2003-Ohio-2045, at ¶ 12.
 {¶ 26} R.C. 3109.04(E)(1)(a) provides as follows:
 {¶ 27} "The court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, the child's residential parent, or either of the parents subject to a shared parenting decree, and that the modification is necessary to serve the best interest of the child. In applying these standards, the court shall retain the residential parent designated by the prior decree or the prior shared parenting decree, unless a modification is in the best interest of the child and one of the following applies:
 {¶ 28} "(i) The residential parent agrees to a change in the residential parent or both parents under a shared parenting decree agree to a change in the designation of residential parent.
 {¶ 29} "* * *
 {¶ 30} "(iii) The harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child.
 {¶ 31} R.C. 3109.04(F)(1) sets forth factors governing the allocation of parental rights and responsibilities, and states that in determining the best interests of a child, the court shall consider all relevant factors, including, but not limited to: (a) the wishes of the child's parents; (b) if the court has interviewed the child in chambers regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child; (c) the child's interaction and interrelationship with his parents, siblings, and any other person who may significantly affect the child's best interest; (d) the child's adjustment to his home, school, and community; (e) the mental and physical health of all persons involved; (f) the parent more likely to honor and facilitate visitation and companionship rights approved by the court; (g) whether either parent has failed to make all child support payments, including all arrearages, that are required; (h) whether either parent previously has been convicted of or pleaded guilty to any criminal offense; (i) whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent his or her right to visitation in accordance with an order of the court; and (j) whether either parent has established a residence, or is planning to establish a residence, outside this state.
 {¶ 32} In the case at bar, the trial court did not identify the statutory section containing the factors to be considered in making a best interest determination. Further, the trial court made no findings of fact with regard to the best interests of the children.
 {¶ 33} Pursuant to R.C. 3109.04, before a trial court may modify a prior child custody decree, the party requesting the modification must demonstrate: (1) a change in circumstances; (2) that the modification is in the best interest of the child; and, (3) one of the conditions set forth in R.C.3109.04(E)(1)(a)(i-iii). Victor v. Miller (Apr. 19, 2002), 11th Dist. No. 2000-L-177, 2002 WL 603058, at 3.
 {¶ 34} The record here indicates that the trial court did not comply with the first requirement since there was no finding that a change in circumstances with respect to the children had occurred. The record also shows that the trial court did not satisfy the second requirement since it did not engage in a best interest analysis as required by the statute. Accordingly, based on the foregoing omissions, we sustain appellant's second and third assignments of error and remand this matter to the trial court for it to comply with the statutory requirements.
 {¶ 35} For the foregoing reasons, appellant's first assignment of error is not well-taken, and appellant's second and third assignments of error are well-taken. The judgment of the Ashtabula County Court of Common Pleas is affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.
Christley and Grendell, JJ., concur.
[1] We note that the "Memorandum of Understanding Modified Shared Parenting Plan" was attached to appellee's August 27, 2002 motions as an exhibit.
[2] The record reveals that appellant did not immediately sign the agreement. In phone conversations with appellee she indicated she was going to sign the document and bring it with her when the children were exchanged. On several occasions, appellant indicated that she left the document at home. Eventually, appellee obtained another copy of the agreement and presented to appellant for her signature. Appellant signed the document, but she claims that she was coerced to sign the agreement in the Wendy's parking lot because appellee chased and threatened her.