OPINION
{¶ 1} Appellant, Alan Elliot Eggleston, appeals from the January 23, 2006 judgment entry of the Trumbull County Court of Common Pleas, Domestic Relations Division, overruling his objections regarding custody. *Page 2 
 {¶ 2} On January 16, 2004, appellant filed a complaint for divorce against appellee, Lara Rae Eggleston.[1] On February 10, 2004, the parties entered into a plan for shared parenting as well as a separation agreement, and a hearing was held before the trial judge that same date.[2]
 {¶ 3} Pursuant to its March 22, 2004 judgment entry, the trial court granted the parties a divorce on the ground of incompatibility, as well as approved the plan for shared parenting and the separation agreement. The trial court ordered appellant to pay appellee $1,584 per month as spousal support, and $316 per month as child support.
 {¶ 4} On November 17, 2004, appellee filed a "Motion For Reallocation Of Parental Rights And Responsibilities (a: custody[)] Motion To Determine Holiday Companionship (b: visitation)," seeking to be designated as the residential parent of the minor child for school purposes, as well as to designate specific times for the companionship during the Christmas holiday. On December 13, 2004, appellant filed a motion (Custody/Support)," in which he requested to be designated as the residential *Page 3 
parent and legal custodian of the minor child.[3]
 {¶ 5} A hearing was held before the magistrate on January 20, 2005. Pursuant to its January 26, 2005 decision, the magistrate recommended that Marc Lambert, Esq. ("Attorney Lambert") be appointed as Guardian Ad Litem ("GAL") for the minor child. The trial court appointed Attorney Lambert as GAL that same date.
 {¶ 6} On May 25, 2005, a hearing was held before the magistrate. In his June 2, 2005 decision, the magistrate recommended the following: appellant should not have any firearms on his person during the time when the minor child is with him; for purposes of holiday visits, appellee should be the residential parent; exchanges for parenting time should occur at the Solace Center; and Dr. D'Apolito should continue to be the minor child's primary care physician. The trial court adopted the magistrate's decision that same date.
 {¶ 7} Hearings were held before the magistrate on October 4, 2005, and on November 9, 2005.
 {¶ 8} According to appellee, less than thirty days after signing the shared parenting plan, she permanently relocated outside of Trumbull County to Burton, Ohio, and also sold the former marital residence in Liberty, Ohio. She indicated that she was not aware that the shared parenting plan called for her to remain in Trumbull County. Appellee cited financial reasons for her move and alleged that appellant failed to provide her with financial support. She stated that the move placed her and the minor child closer to her parents and extended family. Appellee said that the minor child was doing well in preschool and that his health was excellent. *Page 4 
 {¶ 9} Appellee indicated her concerns regarding appellant as custodian and caretaker of the minor child, including his fascination with weapons and his winemaking hobby. She believed that appellant's winemaking hobby, and the fact that he hunted, would take time away from the minor child. Appellee testified that the minor child would be better off with her because she spends a lot of quality time with him, has a very good one on one relationship with him, they have a very good communication level, there is more family support at her residence, and she does not feel that appellant takes his parenting role seriously.
 {¶ 10} According to appellant, he provided financial support to appellee and the minor child from the time the parties separated in November 2002, through January 2004. He later agreed to pay appellee spousal support in the amount of $1,584 per month as well as child support in the sum of $316 per month, as evidenced in their February 10, 2004 agreement, so long as she and the minor child remained in Trumbull County. He indicated that he has stable employment.
 {¶ 11} With respect to his winemaking hobby, appellant stated that he, along with others, purchased forty-eight acres in Trumbull County and planned on opening a winery. While married to appellee, appellant said that they both enjoyed winemaking and that the minor child liked being around them.
 {¶ 12} Regarding his gun collecting and hunting, appellant testified that he owned ten firearms which are kept in a large safe downstairs in his residence and in a safe upstairs in his bedroom, both under a combination lock and key. He has a license to carry a weapon. On one occasion while he was carrying a pistol, the minor child was playing around, jumped on his back, and the pistol was knocked out of the holster. *Page 5 
However, the pistol was not loaded. He stressed that he has complied with the trial court's order not to carry any guns in the presence of the minor child.
 {¶ 13} Appellant testified that he resides with his fiancé, Marcia, and her fifteen-year-old daughter, Hannah, in a 2600 square foot home in Cortland, Ohio, where the minor child has his own bedroom. He stated that the minor child has a good relationship with him as well as with Marcia and Hannah. Appellant said that the minor child loves the Cortland area, has made friends in the neighborhood, and has attended daycare in Cortland since February 2004.
 {¶ 14} Appellant maintained that he would honor and facilitate parenting time and companionship with the minor child and appellee, that he has never willfully denied companionship rights to appellee, that he is current on his support obligations, and that he has never been convicted of any criminal offense of domestic violence, nor any neglect or abuse. Appellant said, however, that appellee had a protection order issued against her, which is the reason for the exchanges at the Solace Center. He stated that he and appellee are unable to cooperate and make decisions regarding the minor child. Appellant testified with respect to his wishes to have custody of the minor child and that he believed that it would be in the minor child's best interest to name him as the residential parent and legal custodian.
 {¶ 15} Pursuant to his December 8, 2005 decision, the magistrate recommended the following: the shared parenting plan should be terminated; the minor child's best interest would be served by having appellee as the legal custodian and residential parent; appellant should have the minor child every other week in the summer; and under no circumstances should the minor child be around any firearms. The trial court *Page 6 
adopted the magistrate's decision that same date. The trial court issued a nunc pro tunc judgment entry, indicating that appellant was to also have companionship under the standard guidelines and half days available at Christmas vacation and spring break. Appellant filed objections on December 21, 2005.
 {¶ 16} Pursuant to its January 23, 2006 judgment entry, the trial court overruled appellant's objections and stated the following: the custody order previously issued by the magistrate was to remain effective; the objections as to the reimbursement of $4,752 representing spousal support was remanded back to the magistrate for further review; a remand hearing was to be set and all parties must attend; and all orders previously issued by the magistrate should remain in effect.[4]
It is from that judgment that appellant filed a timely notice of appeal and makes the following assignments of error:
 {¶ 17} "[1.] The trial court erred in failing to comply with [R.C.] 3109.04 in making its determination allocating parental rights and responsibilities for the parties' minor son.
 {¶ 18} "[2.] The trial court's order naming [appellee] as the residential parent and legal custodian is not supported by substantial competent and credible evidence and, as such, constituted an abuse of discretion. *Page 7 
 {¶ 19} "[3.] The trial court violated the constitutional rights of appellant in ordering a restriction on his possession of firearms."
 {¶ 20} In his first assignment of error, appellant argues that the trial court erred in failing to comply with R.C. 3109.04 in making its determination allocating parental rights and responsibilities for the minor child. He presents two issues for our review. In his first issue, appellant alleges that the trial court erred in failing to comply with R.C. 3109.04(E)(1)(a) because the decision failed to demonstrate a determination of a change of circumstances or the application of any of the required factors under R.C. 3109.04(E)(1)(a)(i) through (iii). In his second issue, appellant contends that the trial court erred in failing to comply with R.C. 3109.04(F)(1) since its decision failed to demonstrate a consideration of all relevant and required best interest factors.
 {¶ 21} In his second assignment of error, appellant alleges that the trial court's order naming appellee as the residential parent and legal custodian is not supported by substantial, competent, and credible evidence, in relation to the factors set forth in R.C. 3109.04(F)(1), and, as such, constituted an abuse of discretion.
 {¶ 22} Because appellant's first and second assignments of error are interrelated, we will address them together.
 {¶ 23} A trial court enjoys broad discretion in custody proceedings.Davis v. Flickinger (1997), 77 Ohio St.3d 415, paragraph one of the syllabus. A decision to modify custody pursuant to R.C. 3109.04(F) will not be disturbed on appeal absent an abuse of discretion. Id. This standard of review is applied because it is imperative that trial courts are given wide latitude in these cases. Id. at paragraph two of the syllabus. Thus, we will not reverse the decision of the trial court unless the court acted in a *Page 8 
manner that was arbitrary, unreasonable, or unconscionable.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 24} The knowledge that a trial court gains through its observance of the witnesses and the parties in a custody proceeding cannot be conveyed to a reviewing court by a printed record; thus, a trial court is better equipped to examine and weigh the evidence in a custody case.Miller v. Miller (1988), 37 Ohio St.3d 71, 74, citing Trickey v.Trickey (1952), 158 Ohio St. 9, 13. Therefore, an appellate court must be guided by the presumption that the findings of the trial court are correct. In re Jane Doe 1 (1990), 57 Ohio St.3d 135, 138, citingSeasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 80.
 {¶ 25} R.C. 3109.04(E)(1)(a) governs the modification of a prior decree allocating parental rights and responsibilities for the care of children and states:
 {¶ 26} "The court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, the child's residential parent, or either of the parents subject to a shared parenting decree, and that the modification is necessary to serve the best interest of the child. In applying these standards, the court shall retain the residential parent designated by the prior decree or the prior shared parenting decree, unless a modification is in the best interest of the child and one of the following applies: *Page 9 
 {¶ 27} "(i) The residential parent agrees to a change in the residential parent or both parents under a shared parenting decree agree to a change in the designation of residential parent.
 {¶ 28} "(ii) The child, with the consent of the residential parent or of both parents under a shared parenting decree, has been integrated into the family of the person seeking to become the residential parent.
 {¶ 29} "(iii) The harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child."
 {¶ 30} If a trial court determines that a change of circumstances has occurred, it must then consider the statutory factors governing best interest, pursuant to R.C. 3109.04(F)(1), which provides:
 {¶ 31} "In determining the best interest of a child pursuant to this section, whether on an original decree allocating parental rights and responsibilities for the care of children or a modification of a decree allocating those rights and responsibilities, the court shall consider all relevant factors, including, but not limited to:
 {¶ 32} "(a) The wishes of the child's parents regarding the child's care;
 {¶ 33} "(b) * * * [T]he wishes and concerns of the child * * *;
 {¶ 34} "(c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;
 {¶ 35} "(d) The child's adjustment to the child's home, school, and community;
 {¶ 36} "(e) The mental and physical health of all persons involved in the situation;
 {¶ 37} "(f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights; *Page 10 
 {¶ 38} "(g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;
 {¶ 39} "(h) Whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any criminal offense * * *; * * * and whether there is reason to believe that either parent has acted in a manner resulting in a child being an abused child or a neglected child;
 {¶ 40} "(i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;
 {¶ 41} "(j) Whether either parent has established a residence, or is planning to establish a residence, outside this state."
 {¶ 42} In the case at bar, appellant relies on this court's decision in Engelmann v. Engelmann, 11th Dist. No. 2003-A-0020, 2004-Ohio-1530, in which we affirmed in part, reversed in part, and remanded the matter to the trial court. In that case, the trial court failed to identify the statutory section containing the factors to be considered with respect to making a best interest determination, and did not make any findings of fact with regard to the best interest of the children. Id. at ¶ 32. This court stated: "[t]he record * * * indicates that the trial court did not comply with the first requirement [of R.C. 3109.04(E)(1)(a)] since there was no finding that a change in circumstances with respect to the children had occurred. The record also shows that the trial court did not satisfy the second requirement [of R.C. 3109.04(E)(1)(a)] since it did not engage in a best interest analysis as required by the statute. Accordingly, based on the foregoing *Page 11 
omissions, we * * * remand this matter to the trial court for it to comply with the statutory requirements." Id. at ¶ 34.
 {¶ 43} Appellant's reliance on Engelmann is misplaced. By way of background, the parties in that case had agreed to resolve their disputes under a shared parenting plan by way of mediation, and the trial court was asked to adopt the findings of a mediator. UnlikeEngelmann, in the instant case, the trial court complied with and satisfied the R.C. 3109.04(E)(1)(a) and (F)(1) factors.
 {¶ 44} In its December 8, 2005 nunc pro tunc judgment entry, the trial court adopted the magistrate's December 8, 2005 decision and stated: "[b]ased on the testimony presented the court determines that in the best interest of the child would be served by terminating the shared parenting plan. With the shared parenting plan being terminated and the court reviewing [R.C] Section 3109.04(F)(1) it would be in the child's best interest by having [appellee] being the legal custodian and residential parent of minor child. * * *" Again, on December 21, 2005, appellant filed objections to the magistrate's December 8, 2005 decision. Pursuant to its January 23, 2006 judgment entry, the trial court overruled appellant's objections regarding the custody order.
 {¶ 45} We note that a trial court is required to consider the statutory factors, however, it is not necessary for the trial court to set forth its analysis as to each factor in its judgment entry so long as it is supported by some competent, credible evidence. See Coe v.Schneider, 4th Dist. No. 05CA26, 2006-Ohio-440, at ¶ 32; Matis v.Matis, 9th Dist. No. 04CA0025-M, 2005-Ohio-72, at ¶ 6-7; In reJacobberger, 11th Dist. No. 2003-G-2538, 2004-Ohio-6937, at ¶ 26 and ¶ 31. *Page 12 
 {¶ 46} Here, although the trial court did not use the precise language of the statute, the record before us demonstrates that it considered the relevant R.C. 3109.04(E)(1)(a) and (F)(1) factors. Specifically, with regard to R.C. 3109.04(E)(1)(a), the following facts are included in the record: appellee no longer lives in Trumbull County; the minor child is now of school age and attending school; the minor child is seeing a pediatrician near appellee's residence; the trial court noted it would be in the best interest of the minor child to terminate the shared parenting plan and to arrange custody as set forth in the order; and the trial court's entry further states that the minor child was not to be around any firearms and that all firearms must be secured and locked up out of the minor child's sight.
 {¶ 47} With respect to R.C. 3109.04(F)(1), the record supports the following: both parties filed motions for a change of custody (R.C.3109.04(F)(1)(a)); appellant testified regarding the minor child's interaction with his fiancé and her daughter, as well as his grandparents (R.C. 3109.04(F)(1)(c)); appellee testified that she no longer lives in Trumbull County and the minor child is seeing a pediatrician near her residence; appellant testified that there would be more time for various activities and that the minor child loved the Cortland area (R.C. 3109.04(F)(1)(d)); appellant stated that he was healthy and that aside from the minor child's mild stuttering problem, he too was healthy, to which appellee agreed (R.C. 3109.04(F)(1)(e)); appellant said that he was current in his support payments at the time of the hearing; appellee indicated that she moved outside of Trumbull County because appellant failed to make the court ordered support payments (R.C. 3109.04(F)(1)(g)). *Page 13 
 {¶ 48} Based on the foregoing, the trial court did not err in failing to comply with R.C. 3109.04 in making its determination allocating parental rights and responsibilities for the minor child to appellee.
 {¶ 49} Appellant's first and second assignments of error are without merit.
 {¶ 50} In his third assignment of error, appellant alleges that the trial court violated his constitutional rights under the Ohio Constitution, Article I, Section 4, by ordering a restriction on his possession of firearms. He stresses that there was no evidence to show that his gun collecting and possession of firearms endangered the health, safety, or welfare of the minor child.
 {¶ 51} We agree that Article I, Section 4, of the Ohio Constitution "confers upon the people of Ohio the fundamental right to bear arms."Arnold v. Cleveland (1993), 67 Ohio St.3d 35, 46. However, we observe that the Supreme Court of Ohio has specifically stated that "the right to bear arms is not an unlimited right and is subject to reasonable regulation. * * *" Id. at 47.
 {¶ 52} In the instant matter, the record establishes that the trial court ordered appellant to limit his display of firearms around or in the sight of the minor child. The trial court in no manner ordered appellant to discard his guns, restrained his individual use of his firearms, or ruled that he could not have any guns. The trial court merely considered the minor child's best interest with respect to his safety, due to the incident where appellant's pistol was knocked out of his holster while the minor child was playing around.
 {¶ 53} Appellant's third assignment of error is without merit. *Page 14 
 {¶ 54} For the foregoing reasons, appellant's assignments of error are not well-taken. The judgment of the Trumbull County Court of Common Pleas, Domestic Relations Division, is affirmed.
WILLIAM M. O'NEILL, J., concurs,
DIANE V. GRENDELL, J., dissents with a Dissenting Opinion.
DIANE V. GRENDELL, J., dissents with a Dissenting Opinion.
 {¶ 55} I disagree with the majority's conclusion that the trial court complied with the requirements of R.C. 3109.04. There is no evidence in the trial court's judgment entry that the court found a change in circumstances occurred or that a modification was necessary to serve the best interest of the child, as required by R.C. 3109.04(E)(1)(a). Moreover, it appears that the trial court's judgment awarding custody to appellee was predicated upon impermissible considerations. Accordingly, I respectfully dissent. *Page 17 
 {¶ 56} Pursuant to the shared parenting plan adopted by the trial court and incorporated in the final decree of divorce on March 22, 2004, both parents agreed to "continue to have shared care, custody and control" of Alexander during his minority "in accordance with the terms" of the shared parenting agreement.
 {¶ 57} It is undisputed that the terms of the shared parenting agreement provided that "Husband and Wife shall each be designated residential parent during the times that each has possession of the minor child." Furthermore, the agreement provided that "Husband and wife further agree that so long as either party resides within Trumbull County, Ohio, neither party shall relocate or attempt to relocate the parties' minor child outside Trumbull County, Ohio without the express written consent of said other party, or the approval of the Trumbull County Domestic Relations court * * * upon proper pleadings and notice of hearing * * * all in accordance with the statutes of Ohio presently in existence."
 {¶ 58} As the majority correctly notes, R.C. 3109.04(E)(1)(a) governs the instant action. The statute states, in relevant part, that "[t]he court shall not modify a prior decree allocating parental rights and responsibilities * * * unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child * * * or either of the parents subject to a shared parenting decree,and that the modification is necessary to serve the best interest of the child. In applying these standards the court shall retain theresidential parent designated by the prior * * * shared parentingdecree, unless a modification is in the best interest of the child and one of the following applies: *Page 18 
 {¶ 59} "(i) * * * both parents under a shared parenting decree agree to a change in the designation of residential parent.
 {¶ 60} "(ii) The child, with the consent of * * * both parents under a shared parenting decree, has been integrated into the family of the person seeking to become the residential parent.
 {¶ 61} "(iii) The harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child." R.C. 3109.04(E)(1)(a) (emphasis added).
 {¶ 62} "[A] trial court may not modify a prior decree allocating parental rights and responsibilities unless it first finds a change has occurred in the circumstances of the child or his residential parent; and then, upon further inquiry, the court finds that the modification is in the child's best interests." Lehman v. Lehman (Feb. 28, 1997), 11th Dist. No. 95-T-5327, 1997 Ohio App. LEXIS 716, at *8, citing Clyborn v.Clyborn, 93 Ohio App.3d 192, 195; R.C. 3109.04(E)(1) (emphasis added) (original emphasis omitted). Thus, the court should proceed to a best interest analysis only after the court has determined that a change in circumstances has occurred. Id. (citation omitted).
 {¶ 63} The initial change in circumstances determination is meant to serve as a "barrier that must be hurdled before inquiry can be made on those issues affecting the best interest of the child." Perz v.Perz (1993), 85 Ohio App.3d 374, 376. This barrier is meant to operate as the "domestic relations version of the doctrine of resjudicata," and is meant to prevent the "constant relitigation of the same issues" adjudicated in the prior custody order. Id. Moreover, the change in circumstances must be significant to the question of custody before a best interest inquiry is performed. Id. Before modifying a *Page 19 
prior custody decree, a court must additionally find that the harm likely to be caused by a modification of the custody plan is outweighed by the advantages of the change. Rohrbaugh v. Rohrbaugh (2000),136 Ohio App.3d 599, 603-604 (citation omitted). As stated by the Ohio Supreme Court, the "clear intent" of R.C. 3109.04(E)(1)(a) is "to spare children from a constant tug of war between their parents who would file a motion for change of custody each time the parent out of custody thought he or she could provide the children a `better' environment." Davis v.Flickinger, 77 Ohio St.3d 415, 418, 1997-Ohio-260, citing Wyss v.Wyss (1982), 3 Ohio App.3d 412, 416.
 {¶ 64} In sum, a change in circumstances analysis normally creates a rebuttable presumption in favor of the existing custody arrangement unless continuation of the existing arrangement would have a "material and adverse effect upon a child." Elam v. Elam (Dec. 10, 2001), 12th Dist. No. CA2001-02-028, 2001 Ohio App. LEXIS 5472, at *5 (citation omitted); Rohrbaugh, 136 Ohio App.3d at 604-605; R.C.3109.04(E)(1)(a)(iii); see also Lyle v. Kersey (Jun. 30, 2000), 12th Dist. No. CA99-11-031, 2000 Ohio App. LEXIS 2967, at *6-*7, ("although R.C. 3109.04(E) requires a change in circumstances before a trial court can modify parental rights and responsibilities, a change incircumstances, in and of itself, does not require a modification ofcustody" unless the modification is also shown to be in the best interest of the children and R.C. 3109.04(E)(1)(a)(i)-(iii) applies) (emphasis added) (citation omitted).
 {¶ 65} It is well-settled that a relocation of a residential parent to another jurisdiction does not, in and of itself, qualify as a change in circumstances under 3109.04(E)(1)(a). Vincenzo v. Vincenzo (11th Dist. 1982), 2 Ohio App. 3d 307, 308- *Page 20 
309; Schiavone v. Antonelli (Dec. 10, 1993), 11th Dist. No. 92-T-4794, 1993 Ohio App. LEXIS 5891, at *9; Gydosh v. Vice, 8th Dist. No. 80176, 2002-Ohio-1388, 2002 Ohio App. LEXIS 1404, at *10. "To hold otherwise would encourage parents to change their residence in an effort to modify custody, which would directly conflict with the intent of the statue."Given v. Sanzone (Jul. 25, 2001), 9th Dist. No. 20264, 2001 Ohio App. LEXIS 3304, at *6.
 {¶ 66} Thus, when a divorce decree expressly or impliedly prohibits the custodial parent's ability to remove the child from the jurisdiction, the burden shifts to the parent wishing to relocate the child to demonstrate that the decree should be modified to permit the child's removal. Hauck v. Hauck (Mar. 31, 1983), 8th Dist. No. 44908, 1983 Ohio App. LEXIS 14490, at *4 (citation omitted); Valentyne v.Ceccacci, 8th Dist. No. 83725, 2004-Ohio-4240, at ¶ 53;Johnson-Wooldridge v. Wooldridge (Jul. 26, 2001), 10th Dist. No. 00AP-1073, 2001 Ohio App. LEXIS 3319, at *15. In such situations, the court has the option of enjoining a parent from removing the child, pursuant to the decree's terms, changing custody to that of the parent residing in the jurisdiction, or modifying the decree to permit removal of the children. Hauck, 1983 Ohio App. LEXIS 14490, at *4 (citations omitted).
 {¶ 67} In the instant matter, it is undisputed that Appellee violated the Shared Parenting Agreement within 30 days of signing it, by moving with her child out of Trumbull County to Geauga County without the consent of the Appellant, and without an order from the court, thus the burden was upon her to show that the "[t]he harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child." *Page 21 
 {¶ 68} In awarding custody to appellee, the trial court made the following finding:
 {¶ 69} "Based upon the testimony presented, the trial court determines that the best interest of the child would be served by terminating the shared parenting plan * * *. Under no circumstances should [the] child be around any firearms and all firearms to be secured and locked up out of sight of minor child."
 {¶ 70} Based upon the foregoing, I cannot conclude that the trial court complied with the requirements of R.C. 3109.04(E)(1)(a). Although the majority is correct that "[a] trial court's judgment entry `may be general,' unless a party makes a request for separate `findings of fact and conclusions of law'[,] [t]he court must make some finding, pursuant to R.C. 3109.04(E)(1)(a)(iii), that the harm is outweighed by the advantages of changing the environment." Sayre v. Hoelzle-Sayre (1994),100 Ohio App.3d 203, 212 (citations omitted). However, this "does not stand for the broader proposition that the court can change permanent custody without even referring to the threshold findings it is required to make under R.C. 3109.04(E)(1) — i.e., that there has been a change of circumstances, that a modification is in the best interests of the child, and that the benefits of such a change outweigh any ill effects the child might experience." Schaeffer v. Schaeffer, 1st Dist. Nos. C-020721, C-020722, C-020723, C-030255, C-030385, 2004-Ohio-2032, at ¶ 26 (emphasis added); accord In re Kennedy (1994), 94 Ohio App.3d 414,417 ("the judgment entry must have some evidence which supports the elements of the * * * statute.") (emphasis added).
 {¶ 71} Here, no such evidence exists. The majority attempts to justify the trial court's decision by pointing to record evidence that Alex "no longer lives in Trumbull County * * * is now of school age and attending school [and] is seeing a pediatrician near *Page 22 
appellee's residence." However, a careful review of the record reveals that, at the time of the hearing, Alex was attending preschool, just as he was prior to his move from Trumbull County. Moreover, the "findings" cited to by the majority to justify the trial court's order changing custody, conveniently ignore the fact that both Alex's change to a new pediatrician and a new residence were the result of a direct violation of the terms of a valid court order.
 {¶ 72} Thus, the only reasonable conclusion that one can reach based upon the language of the trial court's judgment entry, is that the court based its decision primarily on appellant's possession and carrying of firearms. Although apparently couched as part of the trial court's "best interest" analysis, this is an impermissible consideration. The trial court cannot prohibit a law abiding person with a Concealed Carry permit from carrying a weapon when with his child, or predicate a modification in child custody on this basis, particularly when appellant's carrying of the weapon is not a "changed circumstance."
 {¶ 73} As the majority readily acknowledges, Article I, Section 4 of the Ohio Constitution "confers upon the people of Ohio the fundamental right to bear arms." Arnold v. Cleveland (1993), 67 Ohio St.3d 35, at paragraph two of the syllabus (emphasis added). This has been interpreted as conferring "to every person a fundamentalindividual right to bear arms for the defense of themselves and their property." State v. Greene, 10th Dist. No. 02AP-1247, 2003-Ohio-2832, at ¶ 16 (emphasis sic), citing Arnold, 67 Ohio St.3d at 43.
 {¶ 74} Ohio's Concealed Carry Statute, R.C. 2923.125 effectuates this right, stating that subject to the satisfaction of certain specified conditions, "after a sheriff's *Page 23 
receipt of a[ ] * * * completed application form for a license to carry a concealed handgun, the supporting documentation, and, if not waived, the license fee, the sheriff * * * shall issue to the applicant a license to carry a concealed handgun." R.C. 2923.125(D)(1). The undisputed evidence shows that appellant was in possession of a valid concealed carry license.
 {¶ 75} The majority, citing to Arnold, states that "the right to bear arms is not an unlimited right and is subject to reasonable regulation."67 Ohio St.3d at 47. This is indeed true. However, the majority's statement ignores the fact that the Supreme Court also determined such limitations to constitutional rights are meant to be imposed by thelegislature and not the judiciary. Id. ("This court has established that firearm controls are within the ambit of the police power."); see alsoHoliday Homes, Inc. v. Butler Cty. Bd. of Zoning Appeals (1987),35 Ohio App.3d 161, at paragraph two of the syllabus ("[u]nder Section 1, Article II of the Ohio Constitution * * * the police power of this state is entrusted to the Ohio General Assembly"); State v. Wise (Jul. 13, 1999), 4th Dist. No. 98CA12, 1999 Ohio App. LEXIS 3398, at *3 ("Article II vests legislative power in the General Assembly * * *. Legislative power includes `police power,' the power to enact reasonable laws necessary to protect * * * safety, health, order, and morals.") (citation omitted). Although it has been said that "The police power is not exclusively within the legislative branch * * *," the judicial branch is merely "the arbiter of such limitations." Bd. of Cty. Commrs. ofFranklin Cty. v. Pub. Utils. Comm. (1923), 107 Ohio St. 442, 452.
 {¶ 76} Although there is reason to suspect that the court felt justified, in Alex's "best interest," to impose this restriction based upon "the incident where appellant's pistol was knocked out of his holster while the minor child was playing," such a *Page 24 
restriction, and in particular, any change in custody predicated upon this incident was impermissible, particularly when there was no evidence that Alex was endangered as a result, and appellant complied with the trial court's order once it was made. See Wyss, 3 Ohio App.3d at 414
("Change of custody cannot properly be used as a penalty for past [conduct] where the [conduct] is not continuing and not shown to materially adversely affect the child.") (citation omitted).
 {¶ 77} For these reasons, the judgment of the Trumbull County Court of Common Pleas, Domestic Relations Division, should be reversed.
[1] Appellant and appellee were married on May 20, 1995, and one child was born as issue of the marriage: Alexander Ezekiel Eggleston ("minor child"), d.o.b., November 23, 2000.
[2] Under the terms of the shared parenting plan, the parties were both designated as the residential parent of the minor child, during the times that each had possession of the minor child. The possession schedule indicated that the minor child was to be with each parent on an alternating week basis. The shared parenting plan also stated that neither party should relocate or attempt to relocate the minor child outside of Trumbull County without the prior express written consent of the other party or the court. In addition, the separation agreement indicated that appellant would pay spousal support to appellee for one year, unless she died, remarried, relocated outside of Trumbull County, or cohabitated with another unrelated adult male.
[3] Appellant filed an amended motion on December 16, 2004, in order to correct a clerical error.
[4] The magistrate held a hearing on February 22, 2006, and indicated the following in his February 23, 2006 decision: appellee owed appellant $4,752 for spousal support paid March, April, and May 2005; appellee had left the marital residence by March 2005; parties agreed that the previous shared parenting plan and child support order would remain in effect until September 1, 2006; the agreement would not affect appellant's appeal rights; and beginning September 1, 2006, appellant's child support was to remain at $316 per month, and the difference that should be paid would be credited until the $4,752 is repaid. The trial court adopted the magistrate's decision that same date. Also, on June 23, 2006, appellant filed a motion for remand, alleging that the testimony of the GAL was inaudible. Appellee filed objections on July 6, 2006. Pursuant to this court's July 31, 2006 judgment entry, we remanded the matter to the trial court for the sole purpose for the trial court to determine whether or not it relied on the testimony of the GAL when ruling on appellant's objections to the magistrate's decision. On September 6, 2006, the trial court issued a judgment entry indicating that it did not rely on the testimony of the GAL upon ruling on the objections to the magistrate's decision. *Page 1