OPINION
{¶ 1} Appellants, Theresa and Christopher G., separately appeal a decision of the Butler County Court of Common Pleas, Juvenile Division, granting legal custody of their two sons to the children's paternal aunt and uncle. We affirm.
 {¶ 2} Theresa and Christopher G. ("Mother" and "Father") are the parents of two toddlers who are the subject of this custody dispute. D.G., the older of the two boys, was born on November 19, 2001; T.G. was born on November 3, 2002. The matter commenced in February 2004 when Viki and Phillip G. ("Aunt" and "Uncle") filed a complaint in dependency. The complaint included an ex parte motion for temporary custody, which the court awarded to Aunt and Uncle pending a hearing on the matter. The complaint was based upon allegations that Mother and Father failed to provide adequate care for the boys. In part, this involved extended interstate trips during which the family lived under unsanitary conditions in the cab of Father's semi tractor trailer.
 {¶ 3} In August 2004, D.G. and T.G. were adjudicated dependent. Aunt and Uncle moved for legal custody. Following a three-day hearing, the magistrate issued a decision awarding legal custody to Aunt and Uncle. The juvenile court adopted the magistrate's decision in September 2005. Father filed objections to the decision, and the juvenile court overruled these objections in December 2005. Mother and Father separately appeal the custody decision, raising a total of four assignments of error.
 {¶ 4} As a preliminary matter, we note that an appellate court reviews a juvenile court's custody determination for an abuse of discretion. In re Brown (2001), 142 Ohio App.3d 193,198. An abuse of discretion implies that the court's decision was unreasonable, arbitrary, or unconscionable, and not merely an error of law or judgment. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219. The discretion afforded to a juvenile court in custody matters "should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned." In re Starks,
Darke App. No. 1646, 2005-Ohio-1912, ¶ 17, quoting Miller v.Miller (1988), 37 Ohio St.3d 71, 74. We are mindful of these considerations while considering the following alleged errors.
 {¶ 5} Mother's Assignment of Error No. 1:
 {¶ 6} "THE TRIAL COURT'S DECISION REGARDING A CHANGE IN CIRCUMSTANCES TO SUPPORT A MODIFICATION IN THE CHILDREN'S CUSTODY IS NOT SUPPORTED BY CLEAR AND CONVINCING EVIDENCE."
 {¶ 7} In her sole assignment of error, Mother argues that no substantive change of circumstances occurred which justified awarding legal custody of the children to non-parent relatives according to the best interests of the children.
 {¶ 8} We initially observe that Mother failed to raise any objections to the magistrate's decision. As Juv.R. 40(E)(3)(d) provides, "[a] party shall not assign as error on appeal the court's adoption of any finding of fact or conclusion of law unless the party has objected to that finding or conclusion under this rule." The waiver under Juv.R. 40(E)(3)(d) "embodies the long-recognized principle that the failure to draw the trial court's attention to possible error, by objection or otherwise, when the error could have been corrected, results in a waiver of the issue for purposes of appeal." In re Etter (1998),134 Ohio App.3d 484, 492, citing Goldfuss v. Davidson,79 Ohio St.3d 116, 121, 1997-Ohio-401.
 {¶ 9} Mother's failure to timely raise the alleged error before the trial court results in a waiver of the issue for purposes of appeal. See In re G. Children, Butler App. No. CA20041-2-300, 2005-Ohio-4745, ¶ 4-5; Etter at 492; In reEbenschweiger, Butler App. No. CA20030-4-080, 2003-Ohio-5990, ¶8-9. In addition, a review of the record reveals no plain error in trial court's custody determination. See In re West, Athens App. No. 05CA4, 2005-Ohio-2977, ¶ 25.
 {¶ 10} We further observe that Mother and the magistrate relied upon the incorrect standard in discussing this issue. As this court held in the past:
 {¶ 11} "While R.C. 2151.23(F)(1) states that a juvenile court must exercise its jurisdiction in child custody matters in accordance with R.C. 3109.04, neither R.C. 2151.23 nor 2151.353specify that the juvenile court must apply the change ofcircumstances standard before granting legal custody of thechild. Nor have we found any cases applying the change of circumstances standard to a juvenile court's award of legal custody of a dependent or neglected child." In re Wells (Dec. 26, 1995), Butler App. No. CA95-04-058, at 9. (Emphasis added.)
 {¶ 12} Even had Mother preserved the issue for appeal, we would find it without merit in accordance with the reasoning espoused by this court in Wells. The trial court was not required to find a change in circumstances before awarding legal custody of D.G. and T.G. to Aunt and Uncle. Cf. In re Bonfield,97 Ohio St.3d 387, 2002-Ohio-6660, ¶ 44 (explaining that, where custody has already been granted by a domestic relations court in a divorce action, and where the children are subsequently adjudicated abused, neglected, or dependent, a juvenile court must follow R.C. 3109.04 in making its custody determination). In fact, there was no prior order by which to ascertain whether or not the circumstances had changed. Therefore, R.C. 3109.04 is inapplicable to the present matter.
 {¶ 13} Father's Assignment of Error No. 1:
 {¶ 14} "THE COURT ERRED AND ABUSED ITS DISCRETION WHEN IT AWARDED CUSTODY TO A NON-PARENT WHEN THE PARENTS WERE NOT UNSUITABLE."
 {¶ 15} Father insists that the juvenile court abused its discretion in awarding custody to nonparent relatives without first finding that he and Mother were unsuitable parents.
 {¶ 16} Upon adjudicating a child abused, neglected, or dependent, a juvenile court may award legal custody of the child to a parent or nonparent. R.C. 2151.353(A)(3). Father submits that the juvenile court must deem he and Mother unfit parents prior to awarding custody of the children to Aunt and Uncle. This court recently addressed the same argument in the case In reD.R., Butler App. No. CA2005-06-150, -151, 2006-Ohio-340. The mother in that case also argued that the juvenile court was required to find that she was an unsuitable parent before awarding legal custody of her two children to the children's paternal grandmother. This court disagreed, noting that "[t]he requirement of finding parent unsuitability does not apply to dispositional hearings following an adjudication that the child is abused, dependent, or neglected." Id. at ¶ 14. See, also, Inre C.S., Butler App. Nos. CA2005-06-152, CA2005-06-153,2006-Ohio-5198; In re A.W.-G., Butler App. No. CA20030-4-099,2004-Ohio-2298. It is well-established that a determination of the child's best interest remains the primary standard to be applied in custody cases. Brown, 142 Ohio App.3d at 198.
 {¶ 17} In the present matter, both D.G. and T.G. were adjudicated dependent. Following these determinations, the juvenile court awarded legal custody of the children to Aunt and Uncle. The court was not required to find that Mother and Father abandoned the children or were otherwise unsuitable parents. Rather, based upon detailed findings, the court ruled that placing the children in the legal custody of Aunt and Uncle aligned with the best interests of the children. The court did not abuse its discretion in failing to employ a higher standard.
 {¶ 18} We next address whether the trial court's awarding of legal custody to non-parents constituted an abuse of discretion. If a juvenile court's decision regarding a child's best interest is not supported by competent, credible evidence, then it is unreasonable and we may reverse it. In re Nice, (2001),141 Ohio App.3d 445, 455. After reviewing the record in the case at bar, however, we find that the juvenile court acted within its discretion in awarding custody to Aunt and Uncle.
 {¶ 19} The record reveals the following facts. Working as a semi truck driver, Father had Mother and the children accompany him on deliveries. At a minimum, these trips included one from Utah to Indiana and one from Utah to Ohio. The family, which also included Mother's 8-year-old daughter from a previous relationship and two dogs, lived in the cramped truck cab quarters and in hotels during this time. The daughter explained that the family lived in hotels and in the truck "so the welfare [did] not find [them]."
 {¶ 20} Evidence shows that life on the road was unsanitary. Aunt and Uncle presented writings in which paternal aunt Diane G. spoke of contacts she had with the boys in late 2003. Diane described an occasion where the children stayed with her while Mother accompanied Father on a delivery to Chicago. Diane stated that the boys had caked dirt and excrement stuck to their skin, were wearing dirty clothes, and were badly in need of haircuts. She further recounted how she removed D.G. and T.G.'s car seats from the truck for washing after discovering that the seats strongly smelled of body odor, urine, and food. While questioning Mother's daughter, Diane learned that the parents left the children in the truck while they went to bathe and eat during rest stops. The daughter told Diane that Mother and Father would bring the children leftover food on these occasions.
 {¶ 21} The record also reveals that Mother and Father failed to show up for scheduled visits with the boys while they were in the temporary custody of Aunt and Uncle. Aunt testified that Father failed to visit the children from December 2004 to June 2005 and Mother failed to visit from October 2004 to June 2005. Mother claims that Aunt and Uncle prevented her from seeing the boys on a number of occasions and that transportation difficulties and Father's work schedule also hindered their visits. She was unable to provide any evidence, however, that Aunt and Uncle prevented her from exercising her visitation rights. In February 2005, Mother admitted to a case worker that she would not visit the boys for fear that she would physically assault Aunt and Uncle.
 {¶ 22} It is undisputed that Mother and Father declined to provide financial support, clothing, or food for the boys once they entered the custody of Aunt and Uncle. Mother reasoned that Aunt and Uncle never asked them to supply anything. She also insisted that she would not "give away" the boys' clothing by handing it over to Aunt and Uncle.
 {¶ 23} The record also shows that Mother and Father expressed disinclination towards the programs and services with which the boys became involved after custody was transferred to Aunt and Uncle. A social summary dated April 22, 2004 states that "Both parents remain angry towards all parties, systems, and have made generalized threats." The magistrate found that the parents did not believe they possessed any parenting deficiencies and, therefore, had no interest in participating in services designed to improve their parenting skills. Both Mother and Father stated that they were unwilling to participate in individual counseling.
 {¶ 24} There is much evidence in the record that weighs in favor of the court's custody award. Aunt relayed her poor impression of the physical health of the children prior to the custody transfer. Both appeared to be pale and undernourished, and were behind on their immunizations. Following the transfer, the children displayed signs of physical and emotional growth.
 {¶ 25} The magistrate found that the children have a positive bond with Aunt and Uncle. Aunt testified that she and her husband involve the boys in numerous physical activities such as camping, bicycling, swimming, and trips to the playground. She also testified that the boys were small, frail, and unnaturally quiet when they came to live with her. She relayed that the boys had adjusted well to life in her home, were happy and healthy, and had established a daily routine. Aunt also stated that she made dietary changes for the boys according to the advice of a nutritionist.
 {¶ 26} A Butler County Children Services Board ("BCCSB") case worker observed the children in their new environment and reported that Aunt and Uncle had followed the agency's recommendations and that the children appeared to be healthy and well adjusted. The boys' guardian ad litem filed a written report and recommendation in which he expressed satisfaction with the boys' new living environment and observed that Aunt and Uncle interacted well with the children. The guardian noted that Aunt and Uncle had provided the necessary medical care for the boys and involved the boys in programs designed to address their developmental delays. These programs included the Help Me Grow Program, a play group at Taft Elementary School, a developmental program offered by the Board of Mental Retardation and Developmental Disabilities, an education plan, and speech therapy. The magistrate noted that both the BCCSB case worker and the guardian ad litem recommended that the court grant legal custody of the boys to Aunt and Uncle.
 {¶ 27} After examining the record, we conclude that the juvenile court's decision regarding the best interests of the children was supported by competent, credible evidence. The court did not abuse its discretion when it determined that the best interests of the children were served by awarding legal custody to Aunt and Uncle.
 {¶ 28} Father's first assignment of error is overruled.
 {¶ 29} Father's Assignment of Error No. 2:
 {¶ 30} "THE TRIAL COURT ERRED WHEN IT EXCLUDED EVIDENCE REGARDING THE CUSTODIAN'S PAST CONDUCT AND A POSSIBLE WITNESS."
 {¶ 31} Assignment of Error No. 3:
 {¶ 32} "THE COURT'S CUSTODY ORDER WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 33} In his second assignment of error, Father claims that the trial court erred in excluding evidence of personal diaries, notes, and emails. Father fails to specifically identify these documents, and neglects to describe the contents or value of these items. Rather, Father succinctly states that "the evidence was relevant and has been proffered for this court's review." This assertion is unsupported by any explanation, analysis, or citations to the record or any legal authority.
 {¶ 34} Similarly, in his third assignment of error, Father appears to challenge the juvenile court's decision as against the manifest weight of the evidence. However, his brief merely presents a hasty listing of vague arguments including manifest weight, sufficiency of the evidence, and noncompliance with Ohio law. These contentions were submitted without any explanation, analysis, or citations to the record or to specific Ohio cases or statutes.
 {¶ 35} App.R. 16 governs the contents of appellate briefs and provides that "appellant shall include in its brief * * * [a]n argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies." App.R. 16(A)(7). App.R. 12 provides that an appellate court "may disregard an assignment of error presented for review if the party raising it fails to identify in the record the error on which the assignment of error is based or fails to argue the assignment separately in the brief, as required under App.R. 16(A)." App.R. 12(A)(2).
 {¶ 36} Pursuant to the appellate rules, we decline to address Father's second and third contentions due to his total failure to brief the assigned errors. See, e.g., Hawley v. Ritley (1988),35 Ohio St.3d 157, 159; State v. Steele, Butler App. No. CA2003-11-276, 2005-Ohio-943, ¶ 128-32; State v. Watson (1998),126 Ohio App.3d 316, 321-22.
 {¶ 37} Judgment affirmed.
Walsh and Brogan, JJ., concur.
Brogan, J., of the Second Appellate District, sitting by assignment of the Chief Justice, pursuant to Section 5(A)(3), Article IV of the Ohio Constitution.