OPINION
{¶ 1} Appellant, S.H ("father"), appeals the decision of the Madison County Court of Common Pleas, Juvenile Division, regarding child support and custody of his minor son.
 {¶ 2} Father and the child's mother, C.C. ("mother"), met and engaged in a brief liaison while both were on active duty in the military in February 2004. The mother returned to the United States and the child was born in October 2004. After father returned from *Page 2 
overseas, paternity was reportedly established.[1]
 {¶ 3} The parties lived together only briefly at father's residence in 2005. After mother left father's house and returned to her mother's home, father filed a "[c]omplaint for designation as residential parent and legal custodian" of the child. The matter was transferred to Madison County, mother's county of residence.
 {¶ 4} A hearing was held over three separate sessions during several months. The trial court issued a decision in 2006, and, upon request, filed findings of fact and conclusions of law. In its decision, the trial court set child support and named mother residential parent and legal custodian of the child.
 {¶ 5} Father appealed, presenting four assignments of error to this court for our review. After reviewing the assignments of error set forth by father, we will combine and address the first and fourth assignments of error.
 {¶ 6} Assignment of Error No. 1:
 {¶ 7} "THE TRIAL COURT ERRED IN FAILING TO DESIGNATE DEFENDANT-APPELLANT [FATHER] AS THE RESIDENTIAL PARENT OF THE PARTIES' MINOR CHILD."
 {¶ 8} Assignment of Error No. 4:
 {¶ 9} "THE TRIAL COURT ERRED IN FAILING TO ANALYZE THE FACTORS AS CONTAINED IN R.C. 3109.04(F) IN DETERMINING THE BEST INTEREST OF THE CHILD."
 {¶ 10} The parties in this case were never married to each other and, therefore, the custody determination was within the province of the juvenile court. See R.C. 2151.23(A)(2) (juvenile court has jurisdiction to determine the custody of any child not a ward of another *Page 3 
court of this state).
 {¶ 11} R.C. 3109.042 provides that: "An unmarried female who gives birth to a child is the sole residential parent and legal custodian of the child until a court of competent jurisdiction issues an order designating another person as the residential parent and legal custodian. A court designating the residential parent and legal custodian of a child described in this section shall treat the mother and father as standing upon an equality when making the designation."[2]
 {¶ 12} Under such circumstances, the trial court shall determine custody based on the best interests of the child pursuant to R.C.3109.04(B)(1), and the best interest factors enumerated in R.C.3109.04(F). Anthony v. Wolfram (Sept. 29, 1999), Lorain App. No. 98CA007129, citing In re Byrd (1981), 66 Ohio St.2d 334, syllabus;Self v. Turner, Mercer App. No. 10-06-07, 2006-Ohio-6197, ¶ 7-8.
 {¶ 13} We begin our analysis mindful that the discretion a trial court enjoys in custody matters should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned. Miller v. Miller
(1988), 37 Ohio St.3d 71,74; In re Brown (2001), 142 Ohio App.3d 193.
 {¶ 14} The knowledge a trial court gains through observing the witnesses and the parties in a custody proceeding cannot be conveyed to a reviewing court by a printed record. The reviewing court in such proceedings should be guided by the presumption that the trial court's findings were indeed correct. (Citations omitted.) Miller; Pater v.Pater (1992), 63 Ohio St.3d 393, 396. It would not be appropriate in most cases for a court of appeals to independently weigh evidence and grant a change of custody. Miller. *Page 4 
 {¶ 15} When determining the child's best interest, the court is directed by statute to consider all relevant factors, including, but not limited to: the wishes of the child's parents, the child's relationship with his parents and siblings, his adjustment to his home, school, and community, the mental and physical health of persons involved, whether either parent has failed to make ordered child support payment, whether either parent has willfully denied the other parent the right to visitation, and which parent will most likely facilitate visitation. R.C. 3109.04(F)(1); In re Ottariano (July 16, 2001), Butler App. No. CA2000-09-181. If a trial court's decision regarding a child's best interest is not supported by competent, credible evidence, then it is unreasonable and an appellate court may reverse it. In re Nice (2001),141 Ohio App.3d 445, 455; In re T.G., Butler App. Nos. CA2005-10-444, CA2005-12-521, 2006-Ohio-5504, ¶ 18.
 {¶ 16} Father argues under his fourth assignment of error that it was reversible error because the trial court failed to analyze the best interest factors of R.C. 3109.04(F)(1).
 {¶ 17} A reading of the trial court's findings of fact and conclusions of law does not reveal a specific listing or enumeration of each of the factors of R.C. 3109.04(F)(1). However, the trial court stated that it considered the R.C. 3109.04(F)(1) factors and made factual findings regarding the issues covered by the best interest factors to sufficiently provide a basis for review. See Eggleston v.Eggleston, Trumbull App. No. 2006-T-0023, 2007-Ohio-2692 (although the trial court did not use the precise language of the statute, the record demonstrates that it considered the relevant R.C. 3109.04 [F][1] factors); see Ross v. Ross, Preble App. No. CA2004-07-009,2005-Ohio-2922, ¶ 19; cf. In re G.N., 170 Ohio App.3d 76, 2007-Ohio-126, ¶ 36.
 {¶ 18} Father also contests the actual findings the trial court made or did not make. Specifically, father asserts that the trial court did not place adequate responsibility on mother for father's lack of contact with the child, and erred in not finding that mother had emotional *Page 5 
problems, discipline or anger management issues, and lacked stability in her relationships.
 {¶ 19} In its findings, the trial court mentioned the decade or more age difference between the father and mother, who was reportedly 19 years of age when the parties met. The trial court noted that father had not been truthful to the mother about his age and previously failed to disclose that he was married.
 {¶ 20} The court found that father had little contact with the child beyond the two months the trial court found the parties lived together.[3] The trial court was concerned about the stability of father's relationships, noting that he had been divorced twice, dating someone else while mother was living with him, and had become engaged to another woman just before the hearings began.
 {¶ 21} The trial court made the finding that father did not support the child other than when the child and the mother were living with him. The trial court observed that father presented photographs depicting scratches, bruises, and diaper rash on the child to allege neglect or abuse by mother. The trial court found that the child's guardian ad litem ("GAL") made an initial recommendation that custody remain with mother, then changed to custody to father during the proceedings, and at the conclusion of the hearings testified that either home would be appropriate.
 {¶ 22} The trial court indicated that the child had lived with his mother since his birth and was integrated into mother's family and community. The trial court stated that changing the child's environment "could be a significant disruptive factor in the child's life, especially when there has been no clear reason presented for doing so."
 {¶ 23} We are mindful that custody issues are some of the most difficult and agonizing decisions a trial judge must make. Davis v.Flickinger, 77 Ohio St.3d 415, 418, 1997-Ohio-260. *Page 6 
The trial court in the instant case heard testimony over the course of several months from the parties and witnesses for both parties. As we previously noted, the trial court was in the best position to judge the credibility of the witnesses because the knowledge it gained through observing the witnesses and the parties in this custody proceeding cannot be conveyed to a reviewing court by a printed record.
 {¶ 24} We find the trial court properly considered the best interests factors of R.C. 3109.04(F)(1). Competent credible evidence supported the trial court's determination that the best interests of the child in this case was served by naming mother residential parent and legal custodian, and the trial court did not abuse its discretion in its custody decision. Accordingly, father's first and fourth assignments of error are overruled.
 {¶ 25} Assignment of Error No. 2:
 {¶ 26} "THE TRIAL COURT ERRED IN FAILING TO FIND SHARED PARENTING TO BE IN THE BEST INTEREST OF THE MINOR CHILD AS THIS WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 27} Although father initially requested custody of the child, he subsequently submitted a request for shared parenting and a proposed shared parenting plan.
 {¶ 28} R.C. 3109.04(D)(1) states, in pertinent part, that the trial court shall comply with the applicable sections of this division when both or either parent requests shared parenting and files a shared parenting plan. The trial court shall review the plan to determine if the plan is in the child's best interest. R.C. 3109.04(D)(1)(b). The approval of a plan under this division is discretionary with the court. Id.
 {¶ 29} R.C. 3109.04(F)(2)states, in part, that in determining whether shared parenting is in the best interest of the children, a trial court shall consider the best interest factors of R.C. 3109.04(F)(1), and the ability of the parents to cooperate and make decisions jointly, the ability of the parents to encourage the sharing of love, affection, and contact between the *Page 7 
child and the other parent, any history or potential for child abuse, spouse abuse, other domestic violence, the geographic proximity of the parents to each other as that relates to the practical considerations of shared parenting, and the recommendation of the child's guardian ad litem. See, also, R.C. 3119.23.
 {¶ 30} There was testimony at trial that these parents live approximately 60 miles apart in different counties. The child's GAL in the case at bar changed her recommendations for who should be residential parent and legal custodian throughout the proceedings. When questioned by father's attorney at the conclusion of the hearing, the GAL stated that she would be "comfortable" with shared parenting if the parents continued to get along. The trial court, however, found "significant suspicions and recriminations between the [parents]." The father at trial had accused the mother of neglect or abuse, and the trial court noted father's "deception" when the couple first met. The GAL told the trial court that the mother and father had different lifestyles and those differences generated conflict between them.
 {¶ 31} The trial court stated that it had concerns about the parents' ability to cooperate and make decisions together with respect to the child. After considering the factors for shared parenting, the trial court concluded that shared parenting would not be in the child's best interest.
 {¶ 32} We find competent, credible evidence in the record to support the trial court's determination that shared parenting was not in the child's best interest and find no abuse of discretion by the trial court. See In re Minnick, Madison App. No. CA2003-01-001, 2003-Ohio-4245, ¶ 22-23. Father's second assignment of error is overruled.
 {¶ 33} Assignment of Error No. 3:
 {¶ 34} "THE TRIAL COURT ERRED IN ITS CHILD SUPPORT CALCULATION AND IN MAKING THE CHILD SUPPORT RETROACTIVE WHEN THERE WAS NO AGREEMENT BETWEEN THE PARTIES." *Page 8 
 {¶ 35} Matters involving child support are reviewed under the abuse-of-discretion standard. Booth v. Booth (1989), 44 Ohio St.3d 142,144.
 {¶ 36} Contained in the file for the case at bar is an entry signed by the trial court that sets an amount of temporary child support and names father as the obligor. The entry, filed May 5, 2006, is identified as an agreed order. A child support worksheet, prepared by mother's counsel, is attached to the entry. The trial court would later state in its findings of fact and conclusions of law that child support "should remain as set out in said [temporary support] entry" of May 5, 2006.
 {¶ 37} Father argues that despite the language of the temporary support entry, he did not agree to that support order. Neither father nor his counsel signed the entry; rather, the signature line for father's counsel contains the word "submitted." However, father acknowledged at trial that the parties had reached an agreement on temporary child support and that the trial court ordered child support to be paid. If the trial court was misled about the agreement between the parties on temporary support, we can find no indication in the record that father objected or contested the order with the trial court. Accordingly, we find father's argument that the temporary child support order was not an agreed order to be without merit.
 {¶ 38} Father also asserts that the trial court erred by failing to attach a child support worksheet to its child support order. The trial court's order that is the subject of this appeal does not have a support worksheet attached.
 {¶ 39} A trial court must complete a child support worksheet and make that completed worksheet a part of the record when it is making a child support determination; this requirement is mandatory and must be literally and technically followed. Marker v. Grimm (1992),65 Ohio St.3d 139, 143 (interpreting former R.C. 3113.215, stated that following literal requirements assures that order or modification of support is subject to meaningful appellate review); Varner v. Varner,170 Ohio App.3d 448, 2007-Ohio-675, ¶ 6. Therefore, we agree *Page 9 
that the trial court erred by failing to attach a child support worksheet to its final child support order.
 {¶ 40} Father also argues that a support worksheet contained in the file for the temporary support order erroneously omits the fact that he pays union dues for his work and premiums for his child's health insurance. Father provided evidence during the hearing about his union dues and insurance premiums. Both of these factors are listed as adjustments to income in the support calculations contained in R.C.3119.022, and are factors that have bearing on the child support order. See Wachter v. Wachter, Summit App. No. 23170, 2006-Ohio-6970, ¶ 8
(court has held that it was error to exclude health insurance payments for children from the child support computation worksheet; if trial court neglected to include the health insurance figures, it violated the mandatory terms of R.C. 3119.022, but if trial court ignored the figures intentionally, then it was required to enter a deviation from the worksheet in its journal and supply findings of fact to support this determination).
 {¶ 41} The trial court heard evidence from both sides at the hearing regarding their salaries, health insurance premiums, child care, and other support-related issues. We would expect the trial court's final child support order to reflect consideration of that evidence. The trial court's adoption of the calculations from the temporary order precluded the consideration of the evidence admitted at trial. Accordingly, we must reverse the trial court's determination of child support in this case as an abuse of discretion, and remand this issue to the trial court so that it can calculate child support based upon the evidence before it and attach a support worksheet that reflects its calculations.
 {¶ 42} Based upon our decision to reverse and remand these issues to the trial court for further review, father's remaining arguments related to child support are rendered moot. Father's third assignment of error is sustained as it pertains to the final order of child support.
 {¶ 43} Judgment affirmed in part and reversed in part and remanded to the trial court *Page 10 
for proceedings consistent with the law and the opinion of this court.
YOUNG, P.J., and BRESSLER, J., concur.
[1] Both parents and the child's guardian ad litem state that S.H. was determined by scientific testing to be the father of the child. A Muskingum County Court of Common Pleas magistrate noted in a decision before this case was transferred that S.H. was previously determined by testing to be the father of the child. No evidence was provided to this court on this issue, nor can we locate any such information in the file.
[2] There is no indication in the record and the parties do not assert that the facts and circumstances here would bring this case under the authority of a different subsection of the statutes dealing with the allocation of parental rights and responsibilities. See, e.g., Brown v.Rehder (June 28, 1991), Geauga. App No. 90-G-1576.
[3] There was considerable testimony from both parties regarding who was responsible for the lack of contact between father and child after mother left father's residence and father filed his complaint for custody. *Page 1