[Cite as *In re G.R.F.*, 2019-Ohio-3320.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

| | | |
|---|---|---|
| IN RE: | : | |
| | | CASE NO. CA2018-10-124 |
| G.R.F., et al. | : | |
| | | <u>O P I N I O N</u> |
| | : | 8/19/2019 |
| | : | |

APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
JUVENILE DIVISION
Case No. 12-S004359

The Law Office of Joshua G. Burns, LLC, Joshua G. Burns, P.O. Box 959, Lebanon, Ohio 45036, for appellee

Alexander, Wagner & Kinman, Christopher M. Alexander, 423 Reading Road, Mason, Ohio 45040, for appellant

**M. POWELL, J.**

{¶ 1}  Appellant, R.F. ("Mother"), appeals from the decision of the Warren County Court of Common Pleas, Juvenile Division, designating appellee, J.F. ("Father"), the residential parent and sole custodian of the parties' minor children, and finding Mother in contempt.  For the reasons outlined below, we affirm.

{¶ 2}  Mother and Father are the unmarried parents of G.F., who was born in 2010,

and M.F., who was born in 2012. The parties began dating in high school and primarily lived together in Father's parents' home from 2008 to 2012. Shortly after M.F. was born, the parties separated, and Mother moved into an apartment nearby. At the time of the separation, the children remained with Mother while Father assisted by giving Mother weekly cash payments. Shortly thereafter, Father stopped making the weekly payments, and Mother filed for child support in September 2012.

{¶ 3} Six months after Mother moved out, Father began visiting with the children. The parties agreed that due to his work schedule, Father would have the children on the weekends, however, there were times where the schedule could fluctuate. As time continued, Mother began deviating from the agreed upon schedule, and would occasionally leave the children with Father during the weekdays and would oftentimes not inform Father when she would return for the children. Conversely, Mother would sometimes withhold Father's parenting time if she was displeased with Father's behavior or his choice in companions. Due to the irregular nature of his parenting time, Father became increasingly concerned with Mother's fitness as the children's residential parent.

{¶ 4} In May 2016, Father filed a complaint for custody of the children. In his complaint, Father indicated he was in a better position to care for the children and would be the better parent in facilitating parenting time for Mother. Mother was served with Father's complaint for custody in June 2016. Thereafter, in July 2016, Mother accused Father of injuring M.F., and sought a domestic violence civil protection order ("DCVPO") against him. An ex parte DCVPO was then issued, which ordered that Father not have any contact with the children, but that Mother could allow visitation with Father if it was supervised by his parents.

{¶ 5} Stemming from Mother's July 2016 allegations, Father was also charged with one count of domestic violence and one count of endangering children, both misdemeanors

of the first degree. As a result, a no contact order was issued which prohibited Father from initiating any contact with the children until the termination of the pending criminal cases. After a bench trial, Father was found not guilty of the charges and the no contact order was terminated in 2017. At that time, Father's parenting time did not resume because the ex parte DCVPO remained in effect until July 2017.

{¶ 6} In September 2017, after the protection order lapsed, the juvenile court granted Father supervised visitation with the children every Sunday. This was Father's first parenting time with the children since July 2016.

{¶ 7} In November 2017, Mother, without notice to Father or the juvenile court, moved with the children to Arizona. On November 29, 2017, after Mother and the children had already moved, Mother filed with the juvenile court a notice of intent to relocate to Arizona. In response, Father filed an emergency motion for temporary custody and requested the return of the children to Ohio. Father also filed two motions for contempt, asking the court to find Mother in contempt of court for violating the September 2017 parenting order and for violating the juvenile court's local rules by failing to timely file a notice of intent to relocate.

{¶ 8} A hearing on Father's motions took place over three separate days. On August 14, 2018, the juvenile court issued a decision and entry awarding Father custody of the children. Specifically, when considering the best interest factors set forth in R.C. 3109.04(F)(1)(a)-(j), the juvenile court found that while both parents wanted custody of the children, Mother as a residential parent continuously and willfully denied Father's right to parenting time. Accordingly, the juvenile court concluded it was in the best interests of the children to designate Father their residential parent, and for the children to return to Ohio. The juvenile court further found Mother in contempt as alleged in Father's contempt motions and noted that child support and attorney fees would be calculated after an additional

hearing.

{¶ 9} On October 19, 2018, a hearing was held regarding attorney fees, parenting time, and child support. The juvenile court then issued a judgment entry establishing Mother's parenting time with the children and her child support obligation. The juvenile court also ordered Mother to pay $1,200 toward Father's attorney fees incurred in the matter.

{¶ 10} Mother now appeals, raising four assignments of error for our review.

{¶ 11} Assignment of Error No. 1:

{¶ 12} THE TRIAL COURT ABUSED ITS DISCRETION IN GRANTING [FATHER] SOLE CUSTODY OF THE MINOR CHILDREN FOR REASONS THAT ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE

{¶ 13} Mother initially argues that the juvenile court abused its discretion in designating Father the legal custodian and residential parent, as its decision was against the manifest weight of the evidence. Specifically, Mother claims the juvenile court did not properly consider all of the factors set forth in R.C. 3109.04(F)(1) but, instead, relied exclusively on the fact that Mother continuously and willfully denied Father's right to parenting time.

{¶ 14} Before we consider the specific assignment of error, we acknowledge "the power of the trial court to exercise discretion is peculiarly important in proceedings involving the custody and welfare of children." *Kenney v. Kenney*, 12th Dist. Warren No. CA2003-07-078, 2004-Ohio-3912, ¶ 6. "The discretion a trial court enjoys in custody matters should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination has on the lives of the parties concerned." *Id.*; *Davis v. Flickinger*, 77 Ohio St.3d 415, 418 (1997). Therefore, an appellate court's standard of review in custody matters is abuse of discretion. *Miller v. Miller*, 37 Ohio St.3d 71, 74 (1988). An abuse of

- 4 -

discretion is more than an error of law or judgment; it implies the trial court acted unreasonably, arbitrarily, or unconscionably. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶ 15} A manifest weight of the evidence challenge concerns "'the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other.'" *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 12, *quoting State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). In a manifest weight challenge a "reviewing court weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether, in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered." *Schneble v. Stark*, 12th Dist. Warren Nos. CA2011-06-063 and CA2011-06-064, 2012-Ohio-3130, ¶ 67. "[E]very reasonable presumption must be made in favor of the judgment and the finding of facts." *Eastley* at ¶ 21. "If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment[.]" *Id.*

{¶ 16} In this case, Mother and Father were never married to each other. As a result, Mother was designated the sole residential parent and legal custodian of the children by operation of law pursuant to R.C. 3109.042. Specifically, that statute states:

> An unmarried female who gives birth to a child is the sole residential parent and legal custodian of the child until a court of competent jurisdiction issues an order designating another person as the residential parent and legal custodian. A court designating the residential parent and legal custodian of a child described in this section shall treat the mother and father as standing upon an equality when making the designation.

{¶ 17} Under such circumstances, the juvenile court shall determine custody based on the best interests of the child pursuant to R.C. 3109.04(B)(1), and the best interest factors enumerated in R.C. 3109.04(F). *S.H. v. C.C.*, 12th Dist. Madison No. CA2006-12-

- 5 -

051, 2007-Ohio-4359, ¶ 10.

**{¶ 18}** R.C. 3109.04(B)(1) states that a trial court must consider a child's best interests when allocating parental rights and responsibilities. *See In re A.B.*, 12th Dist. Butler No. CA2009-10-257, 2010-Ohio-2823, ¶ 25. In considering a child's best interests, the trial court must consider the factors set forth in R.C. 3109.04(F)(1), which include the following: the wishes of the parents; the child's wishes expressed to the court; the child's interactions and interrelationships with parents, siblings, and other persons who may significantly affect the child's best interest; the child's adjustment to home, school, and community; the mental and physical health of all persons involved in the situation; the parent more likely to honor and facilitate visitation; whether one parent has denied the other parenting time; whether either parent has failed to make all child support payments; and whether either parent has established or is planning to establish a residence outside of Ohio.

**{¶ 19}** In the instant matter, the juvenile court concluded it was in the best interests of the children to designate Father their residential parent, and for the children to return to Ohio. Mother argues the juvenile court made this designation despite evidence that multiple best interest factors weighed in her favor. Therefore, she contends the juvenile court's designation constitutes an abuse of discretion, as the decision was against the manifest weight of the evidence.

**{¶ 20}** According to Mother, the juvenile court incorrectly found that she has continuously and willfully denied Father's right to parenting time as described in R.C. 3109.04(F)(1)(i). Pursuant to R.C. 3109.04(F)(1)(i), the court must consider "whether the residential parent * * * has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court." Here, Mother contends she did not violate any court order giving Father parenting time.

- 6 -

{¶ 21} Father filed for custody of the children in May 2016. Shortly thereafter, and due to the DVCPO and criminal charges, Father did not see the children for over 12 months beginning in July 2016. Prior to that time, the record reflects Mother and Father had a verbal agreement that Father would have the children every weekend. The record further indicates that although referred to as an agreement between the parties, Mother controlled when the visits occurred or if they occurred at all. Specifically, Mother admitted she would occasionally ask Father to keep the children for longer periods of time without notice or would change his parenting time to accommodate her work schedule. She further testified that she would refuse visits due to disagreements between the parties, including when she did not feel comfortable that the children would be safe. When cancelling the visits, Mother indicated she would "keep the [children] and just tell [Father], you know, hey, this weekend is not a good weekend."

{¶ 22} In September 2017, after the DVCPO and criminal charges were resolved, the juvenile court granted Father supervised visitation with the children every Sunday. Those visits were to be supervised by Father's grandmother at grandmother's home and were to increase in duration over time. At the hearing, Mother testified that she was aware the juvenile court had arranged the supervised visits and that she was comfortable with Father's grandmother supervising those visits. She also indicated that although she was "not happy" with the court's order and originally intended to keep the children from Father, she complied, and "several" visits took place.

{¶ 23} Both parties then testified that many of the court ordered visits did not occur due to Mother's prior engagements, including a family outing in Kentucky and a funeral in Michigan. Additionally, after only five or six visits occurred, Mother moved the children to Arizona, unilaterally cutting off all visitation and parenting time from Father. According to Father, after Mother left for Arizona, he had no contact with the children until the juvenile

court ordered electronic parenting time via Skype on December 21, 2017.

{¶ 24} In light of the evidence presented at the hearing, we reject Mother's argument that a court order providing visitation rights to Father did not exist and that she did not continually and willfully deny his right to parenting time. Since Father moved for custody of the children, the record indicates Mother has consistently interfered with Father's exercise of parenting time, including arbitrarily withholding visits, cancelling his court-ordered visits beginning in September, and ultimately moving the children to Arizona in November. As such, we find the record supports the juvenile court's finding that Mother willfully and continuously denied Father's right to parenting time as described in R.C. 3109.04(F)(1)(i).

{¶ 25} Mother next argues the juvenile court failed to "hold Father accountable for the substantial periods of time he spent away from the children due to his own actions." Mother specifically refers to three months in 2015, when an ex parte DVCPO was pending, and periods of twelve and six months in 2016 through 2017 when a second ex parte DVCPO and Father's criminal charges were pending. Mother believes Father should be held accountable for these periods of time because each incident was supported by a court order and police incident report.

{¶ 26} In its decision, the juvenile court noted and considered the history of protection orders against Father and his criminal charges. Upon review, the record indicates Mother dismissed the 2015 ex parte protection order prior to the full merits hearing and that Father resumed "normal" parenting time afterward. Moreover, as the juvenile court found, the 2016 protection order expired after one year and Father was found not guilty on the criminal charges. In light of the disposition of these cases, we find no error in the weight afforded to them by the juvenile court.

{¶ 27} Mother further claims the juvenile court should have considered that Father declined to seek court ordered parenting time prior to 2016 and failed to obtain any

counseling to address his anger issues. However, the record reflects that prior to 2016, Mother and Father had come to a verbal agreement regarding parenting time, which, although irregular, was working for the parties. Additionally, Father testified that while he wanted court ordered parenting time prior to 2016, he could not financially afford to initiate that process. With regard to Father addressing his anger issues, the record is devoid of any requirement that Father obtain counseling. While Mother contends Father agreed to pursue counseling in consideration of the dismissal of the 2015 protection order, there was no court order requiring him to do so.

{¶ 28} Lastly, Mother argues the juvenile court failed to consider her actions in its best interest analysis, including that she has been a good mother and the primary caregiver for the children since 2012. Specifically, Mother notes that the children are age appropriate in school, are current in their medical check-ups, and are enrolled in extracurricular activities in which only Mother has participated. She further indicates Father has been generally uninvolved with the children and agrees that Mother has properly cared for the children.

{¶ 29} Based upon the evidence adduced at the hearing, there was considerable evidence supporting the juvenile court's decision that Father should have sole custody of the children and be designated the residential parent. While Mother argues some evidence weighed in her favor, the record reflects the juvenile court based its decision on a weighing of all the relevant best interest factors. The juvenile court acknowledged that the children have a good relationship with both parents and all grandparents, but further noted that Mother has put a strain on Father's contact with the children and restricted their interaction with him. The record also reflects that while Father did not take the children to their doctor appointments, Mother admitted she did not tell him when those appointments would take place or expect him to attend. Further, the testimony indicates the children did well in Ohio, including when interacting with Father and his family, and have a stable home environment

in which to return. Thus, while the juvenile court considered Mother's proven ability to properly raise the children, it found her consistent interference with Father's parenting time and overall denial of interaction with the children of greater weight. As such, although some factors may weigh in Mother's favor, that evidence is not so overwhelming as to suggest that the juvenile court abused its discretion in awarding Father custody.

{¶ 30} In light of the foregoing, having found that the juvenile court's decision was in the best interests of the children and supported by the manifest weight of the evidence, Mother's first assignment of error is overruled.

{¶ 31} Assignment of Error No. 2:

{¶ 32} THE TRIAL COURT ABUSED ITS DISCRETION AND ALSO COMMITTED PLAIN ERROR BY FAILING TO ESTABLISH PARENTING TIME FOR BOTH PARENTS IN VIOLATION OF O.R.C. §3109.051(A)

{¶ 33} Mother argues the juvenile court abused its discretion and committed plain error by failing to establish a parenting schedule in violation of R.C. 3109.051(A). She contends the "decision failed to establish any parenting time for Mother whatsoever. There is no award of basic parenting time, parenting time on holidays, summertime or vacation." Mother further claims the subject of parenting time was never addressed by the juvenile court.

{¶ 34} According to the record, the juvenile court issued a decision and entry in August 2018 finding that it was in the best interests of the children to grant custody to Father and designate him as their custodian and residential parent. In that decision, the juvenile court noted an additional hearing would be held to address the remaining issues in the case. The record reflects that such a hearing was held in October 2018, where the parties discussed parenting time, child support, and attorney's fees. At that time, Mother requested additional parenting time beyond the standard order. Specifically, Mother requested to see

the boys before and after school several days a week, and further indicated the request was "urgent" due to her limited contact with the boys since the juvenile court's August 2018 decision.

{¶ 35} Following the hearing, the juvenile court issued a judgment entry supplementing its decision from August 2018. The October 2018 supplemental judgment entry determined Mother's parenting time and detailed her basic parenting time schedule. The entry also set forth Mother's parenting time on holidays, vacations, or days of special meaning as defined in the court's model parenting schedule, which was attached to the entry and incorporated therein. The entry further addressed Mother's weekly scheduled electronic communication with the children, potential conflicts with extracurricular activities, and the parents' transportation responsibilities.

{¶ 36} In light of the above, we find no merit to Mother's claim that the juvenile court's decision "failed to establish any parenting time for Mother whatsoever." It appears Mother's argument is based upon her reading of the August 2018 decision separate and apart from the supplemental entry issued in October 2018. However, when considering the two entries together, as intended by the juvenile court, Mother's parenting time was clearly addressed and established, including the schedule to be followed for holidays, summertime, and vacations. Because the juvenile court established parenting time for Mother, it did not violate R.C. 3109.05(A), and Mother's second assignment of error is overruled.

{¶ 37} Assignment of Error No. 3:

{¶ 38} THE TRIAL COURT ABUSED ITS DISCRETION BY FINDING [MOTHER] IN CONTEMPT OF COURT

{¶ 39} In its August 2018 decision, the juvenile court found Mother in contempt of court "for her willful refusal to comply with court orders and for her relocation to a distant state with no notice." Mother argues this finding was an abuse of discretion because the

juvenile court failed to establish that Mother had violated any valid court order. We find no merit to Mother's claim.

{¶ 40} "Disobedience to court orders may be punished by contempt." *Cottrell v. Cottrell*, 12th Dist. Warren No. CA2012-10-105, 2013-Ohio-2397, ¶ 11. To support a contempt finding, the moving party must establish by clear and convincing evidence that a valid court order exists, that the offending party had knowledge of the order, and that the offending party violated such order. *Hetterick v. Hetterick*, 12th Dist. Brown No. CA2012-02-002, 2013-Ohio-15, ¶ 35. In reviewing a trial court's finding of contempt, an appellate court will not reverse such a finding absent an abuse of discretion. *Grow v. Grow*, 12th Dist. Butler Nos. CA2010-08-209, CA2010-08-218, and CA2010-11-301, 2012-Ohio-1680, ¶ 73. An abuse of discretion means more than an error of judgment; it implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶ 41} Mother first argues the juvenile court erred in finding her in contempt of the visitation order because the order was not valid. According to the record, the juvenile court granted Father supervised visitation after a September 12 ,2017 pretrial hearing in which Mother's attorney participated. The order provided Father with supervised visitation every Sunday that would increase in duration over time. Mother does not dispute that she did not comply with the court ordered visitation, a fact which we note is thoroughly supported by the record. Rather, she argues the order was invalid because it was issued "without taking any testimony whatsoever, without ever meeting or hearing from either party and without inquiring into the matter sufficiently to protect the minor children."

{¶ 42} Mother has provided nothing to support her claim that the juvenile court's order awarding Father supervised visitation with the children was procedurally defective. As no transcript of the September 12, 2017 pretrial has been filed, we assume that the

hearing was not conducted on the record. Nonetheless, Mother could have provided a "statement of the evidence or proceeding" pursuant to App. R. 9(C) or an "agreed statement" of the record pursuant to App. R. 9(D) to reflect what transpired at the hearing. Mother did not do so. With no record of the pretrial hearing we have no way of knowing what the juvenile court relied upon in granting visitation to Father or even if Mother's counsel objected or consented to the order. Therefore, we must presume regularity in the proceedings resulting in the issuance of the order. Thus, we find that there was a valid court order awarding Father visitation with the children and that Mother violated the order.

{¶ 43} Next, Mother argues the juvenile court abused its discretion in finding her in contempt for relocating to Arizona. Mother again disputes the authority of the juvenile court to find her in contempt where no court order qualified her right to relocate, and therefore, she was not prohibited from moving without notice.

{¶ 44} The record indicates Mother originally filed a "complaint for support and health insurance order" in November 2012, shortly after M.F. was born and the parties separated. In January 2013, after a hearing, the magistrate found that Mother was the residential placement of the children and overruled Father's objections to the child support order. The magistrate's decision included the following notification requirement:

> If you are a residential parent * * * and intend to move, you MUST file a "Notice of Intent to Relocate" (DR Form 8) with the Court. DR Form 8 must be filed at least 30 days prior to a move within Warren County and 60 days prior to a move out of Warren County. A copy of this notice shall be mailed to the non-moving party. * * * A residential parent shall not remove the children from the state of Ohio for the purpose of establishing residency for them in another state without either (1) a court order approving such change and establishing a parenting schedule or (2) an agreement signed by the parties.

While Mother and Father were both present, the juvenile court ordered the parties to comply with the magistrate's decision. Accordingly, we find Mother was subject to the notification

requirements set forth in the magistrate's decision. Therefore, at a minimum, Mother was required to file a notice of intent to relocate with the juvenile court at least 60 days before she moved the children to Arizona.

{¶ 45} Here, the record indicates, as the juvenile court found, that Mother did not file an intent to relocate with the court until she had already moved to Arizona. Moreover, Mother provided no advance notice to Father, who learned of the children's relocation from his attorney after the children were already in Arizona. As such, Mother clearly failed to abide by the juvenile court's January 2013 order, and the juvenile court did not abuse its discretion in finding Mother in contempt of court.

{¶ 46} We further reject Mother's argument that because parental rights and responsibilities had not been allocated before December 2017, she was not required to comply with the juvenile court's local rule pertaining to a change of residence. Specifically, Mother contends she was not bound by this local rule because "the act of filing a complaint for custody does not instantly subject the parties in a given case to all the local rules and practices of a Court, the issuance of a final Decision does."

{¶ 47} As noted above, Mother and Father were never married to each other. Thus, Mother was the sole residential parent and legal custodian of the children by operation of law pursuant to R.C. 3109.042. According to W.C. Juv. R. 17(F)(1), a custodial parent who intends to relocate the minor children must file a notice of intent to relocate with the juvenile court and mail a copy to the other parties and the child support enforcement agency. If the parent is relocating outside of Warren County, the notice of intent to relocate must be filed at least 60 days prior to relocation. Due to Mother's designation by law as the sole residential parent and legal custodian of the children, she was subject to the juvenile court's local rule pertaining to relocation requirements. Pursuant to that rule, Mother was required to file a notice of intent to relocate at least 60 days prior to the children's relocation, which

Mother simply failed to do.

{¶ 48} Accordingly, because Mother failed to adhere to the juvenile court's orders, we find the juvenile court did not abuse its discretion in finding Mother in contempt of court for her willful refusal to comply with court orders and by relocating to a distant state without notice. Mother's third assignment of error is overruled.

{¶ 49} Assignment of Error No. 4:

{¶ 50} THE TRIAL COURT ABUSED ITS DISCRETION AND COMMITTED PLAIN ERROR BY FAILING TO ABIDE BY THE WARREN COUNTY JUVENILE COURT RULES WHEN IT ISSUED ITS DECISION

{¶ 51} Mother lastly argues the juvenile court abused its discretion and committed plain error because its August 2018 decision "substantially deviates from the Warren County Juvenile Court Local Rules[.]" Specifically, Mother contends the decision violates W.C. Juv. R. 17(D), as it was not submitted for compliance review, and contains multiple errors that could have been identified and corrected prior to filing.

{¶ 52} A trial court has the inherent power to control its own docket and the progress of the proceedings in its court. *Kranz v. Kranz*, 12th Dist. Warren No. CA2012-05-038, 2013-Ohio-1113, ¶ 17. Further, courts are given great latitude in following and enforcing their own local rules. *Id.*; *Dvorak v. Petronzio*, 11th Dist. Geauga No. 2007-G-2752, 2007-Ohio-4957, ¶ 30. Local rules are of the court's own making, generally administrative in nature, designed to facilitate case management and provide guidelines for orderly case administration, and do not involve substantive principles of law or implicate constitutional rights. *Smith v. Conley*, 109 Ohio St.3d 141, 2006-Ohio-2035, ¶ 9; *Dodson v. Maines*, 6th Dist. Sandusky No. S-11-012, 2012-Ohio-2548, ¶ 47. Accordingly, there is no error when, in its sound discretion, the trial court decides that the peculiar circumstances of a case require deviation from its own rules. *Kranz* at ¶ 17. If, however, the local rule implicates

- 15 -

due process, and the trial court's failure to follow it deprives a party of a reasonable opportunity to defend against the disposition of the case in favor of the other party, the trial court is bound to comply with the local rule. *Akin v. Akin*, 9th Dist. Summit Nos. 25524 and 25543, 2011-Ohio-2765, ¶ 29. In an appeal from a trial court's alleged violation of a local rule, an appellant bears the burden of showing both error and prejudice resulting from that error. *Holbrook v. Holbrook*, 12th Dist. Warren No. CA2017-05-055, 2018-Ohio-2360, ¶ 17, citing *Naples v. Naples*, 9th Dist. Lorain No. 08CA009420, 2009-Ohio-1427, ¶ 8.

{¶ 53} In the instant matter, Mother claims the juvenile court committed plain error and abused its discretion because its August 2018 decision did not comply with W.C. Juv. R. 17(D), which requires all final entries regarding support, custody, and parenting time or visitation to be submitted for compliance review prior to filing. Pursuant to the local rule, the compliance review is conducted using a check list set forth in an appendix to the rule. According to Mother, the August 2018 decision omits several items included on that check list, including the addresses and dates of birth for all parties and the effective date of custody change; a reference to the Model Parenting Schedule; language regarding the notice of intent to relocate or the tax dependency exemption; the responsibility to pay court costs; and a designation of school district responsibility. Mother contends these errors seriously affect the basic fairness, integrity, or public reputation of the judicial process because the decision awards custody to one parent and "overlooks mandatory determinations with regard to the children and other parent."

{¶ 54} After a review of the record, we cannot say the juvenile court acted arbitrarily, unreasonably, or unconscionably in its application of its local rules. As noted above, the juvenile court intended its August 2018 decision to be supplemented with its later decision and entry issued in October 2018. Thus, while the juvenile court's initial August 2018 decision did not comply with the court's local rules, Mother fails to acknowledge that the

supplemental decision rendered in October 2018 addressed most, if not all, of the errors Mother has identified. As such, when the decisions are read in conjunction with each other, as directed by the juvenile court, the few remaining violations of the local rule are merely technical and do not involve substantive principles of the law or deprive Mother of a reasonable opportunity to defend against the disposition of the case. Consequently, we find Mother has failed to show any error by the juvenile court. We further note that Mother does not allege, let alone establish, that she suffered any prejudice as a result of the juvenile court's technical omissions. Accordingly, because Mother has failed to show error or prejudice, we find it was within the juvenile court's discretion to deviate slightly from its local rules.

{¶ 55} We also reject Mother's argument that the juvenile court committed plain error when it failed to comply with its local rules. The plain error doctrine is not favored in civil cases and applies only in the extremely rare case involving exceptional circumstances where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself. *Denier v. Carnes-Denier*, 12th Dist. Warren No. CA2016-02-012, 2017-Ohio-334, ¶ 26; *Gable v. Vill. of Gates Mills*, 103 Ohio St.3d 449, 2004-Ohio-5719, ¶ 43. In light of our analysis above, we decline to apply the doctrine of plain error under the facts of this case. Mother's fourth assignment of error is accordingly overruled.

{¶ 56} Judgment affirmed.

S. POWELL, P.J., and PIPER, J., concur.