[Cite as *Simpson v. Genovese*, 2023-Ohio-3532.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## LAKE COUNTY

TREVER SIMPSON,

      Plaintiff-Appellant,

- vs -

TAYLOR GENOVESE,

      Defendant-Appellee.

CASE NO. 2023-L-034

Civil Appeal from the
Court of Common Pleas,
Juvenile Division

Trial Court No. 2014 PR 01189

**O P I N I O N**

Decided: September 29, 2023
Judgment: Affirmed

*R. Russell Kubyn*, Kubyn & Ghaster, 8373 Mentor Avenue, Mentor, OH 44060 (For Plaintiff-Appellant).

*Rochelle M. Hellier*, Axelrod Law Office, 7976 Tyler Boulevard, Mentor, OH 44060 (For Defendant-Appellee).

EUGENE A. LUCCI, J.

{¶1} Appellant, Trever Simpson ("father"), appeals the judgment of the Lake County Court of Common Pleas, Juvenile Division, adopting the magistrate's decision terminating a previous shared parenting plan and naming appellee, Taylor Genovese ("mother"), residential parent and legal custodian of the parties' minor child, T.S. We affirm.

{¶2} In February 2011, mother gave birth to T.S. Father is the biological father, but the parents were not married. In January 2015, the parties entered into a shared parenting plan. Later, mother moved to modify the plan, which was modified by

agreement in October 2016. In September 2017, father moved to modify the allocation of parental rights and responsibilities, and, in March 2018, a new shared parenting plan was adopted by the trial court. In May 2018, mother filed a motion to modify and/or terminate shared parenting. And in January 2019, father filed a motion to modify the temporary and permanent allocation of parental rights and responsibilities. In January 2020, mother and father appeared before the trial court, indicating they reached an agreement. They were placed under oath and testified to the terms of the agreement. The parties were afforded 14 days to submit an agreed shared parenting plan and agreed judgment entry.

{¶3} The parties failed to submit an agreement and the matter was ultimately scheduled for trial on July 10, 2020. On that date, the parties submitted a new shared parenting plan by agreement. The plan was adopted by the trial court on July 13, 2020. Other than a specific parenting/visitation schedule, the parties agreed to, inter alia, "[p]rovide the child with an emotional environment in which they are free to continue to love their parents and to spend time with each other." "Encourage good feelings from the child about the other parent * * *." "Communicate with the other parent openly, honestly, and regularly to avoid misunderstandings which are harmful to the child." "Do not take sides or take issue with decisions or actions made by the other parent, especially in front of the child." "Refrain from arguing, fighting or degrading the other parent in the presence of the child." "Refrain from withholding time with the other parent as punishment to * * * the other parent."

{¶4} On April 6, 2021, mother filed a motion to terminate shared parenting. She subsequently filed a motion to show cause against father alleging he withheld T.S. from

2

her on several occasions. In September 2021, mother filed a motion to show cause against father asserting he failed to pay his portion of the ordered guardian ad litem bond. On January 7, 2022, father filed a motion to show cause against mother alleging she did not allow father to have his holiday parenting time. On January 13, 2022, mother filed a motion for no contact requesting that father ensure that the father's wife (T.S.'s stepmother) has no contact with mother in any way. The matter proceeded to a final hearing before the magistrate on November 2, 2022.

{¶5} After the hearing, the magistrate issued her decision terminating the July 13, 2020 shared parenting plan. The magistrate named mother the residential parent and legal custodian of the child. The magistrate additionally denied the various motions to show cause filed by the parties, but granted mother's motion for no contact requiring father to ensure the stepmother does not contact mother. Father filed objections to the decision, which were overruled by the trial court. The trial court adopted the magistrate's decision in full. This appeal follows.

{¶6} Appellant assigns the following as error:

{¶7} "The trial court erred and committed an abuse of discretion, including adopting the magistrate's decision, in recommending the termination of the sixth-month- old shared parenting plan and granting the appellee the sole residential parent and legal custodian of the minor child, and that the step-mother shall have no contact with the appellee except for in the event of an emergency."

{¶8} "In reviewing a trial court's decision to adopt or reject a magistrate's decision, an appellate court looks for an abuse of discretion. *Hayes v. Hayes,* 11th Dist. Lake No. 2005-L-138, 2006-Ohio-6538, at ¶ 10." *In re Wiley*, 11th Dist. Portage

3

No. 2008-P-0062, 2009-Ohio-290, ¶ 20. A juvenile court's reallocation of parental rights and responsibilities is also reviewed under an abuse of discretion standard. *Foxhall v. Lauderdale*, 11th Dist. Portage No. 2011-P-0006, 2011-Ohio-6313, ¶ 26.

{¶9} The phrase "abuse of discretion" is one of art, connoting judgment exercised by a court, which does not comport with reason or the record. *Gaul v. Gaul*, 11th Dist. Ashtabula No. 2009-A-0011, 2010-Ohio-2156, ¶ 24. "In determining whether the trial court has abused its discretion, a reviewing court is not to weigh the evidence, but, rather, must determine from the record whether there is some competent, credible evidence to sustain the findings of the trial court." *Lucas v. Byers*, 11th Dist. Lake Nos. 2020-L-010, 2020-L- 049, 2020-L-050, 2021-Ohio-246, ¶ 6, citing *Clyborn v. Clyborn,* 93 Ohio App.3d 192,196, 638 N.E.2d 112 (3d Dist.1994).

{¶10} R.C. 3109.04(E)(2)(c) provides:

> The court may terminate a prior final shared parenting decree that includes a shared parenting plan approved under division (D)(1)(a)(i) of this section upon the request of one or both of the parents or whenever it determines that shared parenting is not in the best interest of the children. The court may terminate a prior final shared parenting decree that includes a shared parenting plan approved under division (D)(1)(a)(ii) or (iii) of this section if it determines, upon its own motion or upon the request of one or both parents, that shared parenting is not in the best interest of the children. If modification of the terms of the plan for shared parenting approved by the court and incorporated by it into the final shared parenting decree is attempted under division (E)(2)(a) of this section and the court rejects the modifications, it may terminate the final shared parenting decree if it determines that shared parenting is not in the best interest of the children.

{¶11} Pursuant to R.C. 3109.04(E)(2)(c), a trial court is not required to find a change of circumstances prior to terminating a shared-parenting plan. *In re K.R.*, 11th

4

Dist. Trumbull No. 2010-T-0050, 2011-Ohio-1454, ¶ 44. Rather, in terminating a shared parenting plan, the court must find that the plan is no longer in the best interest of the child. *Duricy v. Duricy*, 11th Dist. Trumbull Nos. 2009-T-0078, 2009-T-0118, 2010-Ohio-3556, ¶ 37-38.

{¶12} The non-exhaustive, best-interest factors found in R.C. 3109.04(F)(1) include: (a) the wishes of the child's parents regarding the child's care; (b) the wishes or concerns of the child as expressed to the court; (c) the child's interaction and interrelationship with her parents and any other person who may significantly affect the child's best interest; (d) the child's adjustment to her home, school, and community; (e) the mental and physical health of all persons involved; (f) the parent more likely to honor and facilitate visitation and companionship rights approved by the court; (g) whether either parent has failed to make all child support payments; (h) whether either parent previously has been convicted of or pleaded guilty to certain criminal offenses or whether either parent has perpetrated child abuse or neglect; (i) whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent his or her right to visitation in accordance with an order of the court; and (j) whether either parent has established a residence, or is planning to establish a residence, outside this state.

{¶13} Moreover, best interest factors related to shared parenting include: the ability of the parents to cooperate and make decisions together relating to the child; the ability of the parents to encourage the sharing of love, affection, and contact between the child and the other parent; any history of, or potential for, child abuse, spousal abuse, other domestic violence, or kidnapping by either parent; the geographic proximity of the

5

parents to one another as that proximity relates to the practical considerations of shared parenting; and the recommendation, if any, of the guardian ad litem. R.C. 3109.04(F)(2)(a)-(e).

{¶14} During cross-examination of father, mother's counsel submitted significant documentary evidence of father's hostile and rancorous text messages. The messages included name calling, threatening comments, threats of withholding visitation, and threats to file contempt motions for various unclear reasons. The messages were read aloud and father confirmed that he sent the messages.

{¶15} Father repeatedly referred to mother as a POS or pos, which he clarified meant "piece of shit." He also called her a "psycho," "a psychopath," and told T.S. her mother is "mentally unstable." Father referred to mother as a "heartless, selfish, loathing manipulative cunt." And father stated that the child would "hate" her one day because she is a "POS mother, and let's face it, so is your man [mother's boyfriend], a POS father."

{¶16} Father also threatened, on social media, mother's reputation and employment. In November of 2020, father stated "You NEED help. One more word from you out of line, and I'm having my wife post ALL of these to a SHAMING FACEBOOK page to blast you, and there's NOTHING you can do. Its completely LEGAL. So please keep going. I'll have your face PLASTERED in [L]ake [C]ounty for the true pos you are." (Emphasis sic.) This message was in response to an ostensible pick-up/drop-off issue the parties had for T.S. The preceding messages father received from mother were short and informational, not threatening or abusive.

{¶17} Father threatened to block mother from his cell phone (and, according to

6

mother, did so once), notwithstanding the shared-parenting plan that was formerly in effect. He also procured a phone for T.S. and threatened to block mother from that phone. Eventually, according to mother, father did block mother for a month from T.S.'s phone.

{¶18} In addition to father's hostility, stepmother also sent at least one aggressive and agitated message to mother, declaring:

> I will straight press charges for you messaging this phone [child's phone]. You were warned. That's it. You can contact her, as always, through [father.] It's you who never allowed him to contact her through you. So GTFO my face with your dramatic ass. Maybe, just maybe, if you didn't teach your daughter to lie and be cruel to others, she would still have a phone. But since, unfortunately, for the time being, she has to see you, she learns these behaviors from you. It's very sad. You should be literally utterly ashamed.

{¶19} Mother asserted that stepmother would use profanity towards her while on the phone with father and within earshot of T.S. Stepmother also threatened mother physically. According to mother, stepmother, with her voiced raised, "has threatened to kick my ass."

{¶20} Mother recounted an incident where, while attending T.S.'s soccer game, stepmother approached her with a dog and told the dog "you can piss on this bitch." Mother stated that stepmother has told her, over the phone, to "go kill yourself" and made other disparaging and profane comments. Mother admitted that there have been times where she has said "not nice things" to stepmother. Mother stated, however, if stepmother begins antagonizing her while on the phone with father, she simply hangs up because "it's not a conversation that needs to continue or it's just going to keep getting ugly."

7

{¶21} Mother testified that the parties can very seldom agree on anything relating to T.S. Father believed that, if the parties could not agree on a course of health care or medical treatment for T.S., no treatment should occur. Father threatened to file a motion for contempt if mother gave the child medical treatment without his consent. Father also alleged mother was in contempt of the shared-parenting plan by placing T.S. "in counseling without [his] permission." And father threatened to have mother "sent to jail" if she consented to giving T.S. an HPV vaccine.

{¶22} The parties also had a disagreement regarding whether the child would go to school in person or virtually. Father desired the latter, while mother advocated for the former. Ultimately, T.S. attended school in person but not without the parties pushing back against one another. Similarly, after a mask-wearing mandate was lifted, mother still wanted T.S. to wear a mask, while father did not. Mother testified T.S. was not vaccinated for COVID-19. Nevertheless, father signed a permission slip allowing her to attend school without a mask.

{¶23} Further, when asked by her counsel whether she has ever been personally insulted in her text messages with father, she responded in the affirmative. She clarified:

> Him calling me names, saying I belong in a trailer park. "You're a POS," "You're a terrible mother, just like your own mother." "I'm going to tell [T.S.] that you're mentally ill." "You used your mom's money for * * * a breast augmentation." And always throws that in my face, when that money had nothing to do with him. Throws it at my face saying, "You're a bitch, you're a cunt." This, this, and that. The same song, different day.

{¶24} When asked how often this occurs, mother stated "[a]s of lately, just about every text."

8

Case No. 2023-L-034

{¶25} Mother filed her motion to terminate shared parenting on April 6, 2021, approximately nine months after the parties entered the amended shared parenting plan which was adopted by the court on July 13, 2020. All text messages submitted at the hearing were sent between July 2020 and the date of trial, in November 2022. Similarly, all testimony received regarding the parties' tense relationship related to these dates. Father was aware of the pending litigation upon service of the April 2021 motion, but still continued to send threatening and hostile messages and seemingly desired to increase, rather than ameliorate, the animosity between the parties. Significantly, father did not file a motion to modify or terminate the shared parenting plan on his own behalf. Father was on clear notice that his scathing communications could work against him, but chose to continue sending them up to the time of the hearing.

{¶26} This court has previously held that "the failure of parents to communicate or cooperate effectively is grounds for terminating an existing shared parenting plan." *Brandt v. Brandt*, 11th Dist. Geauga No. 2012-G-3064, 2012-Ohio-5932, ¶ 19, citing *Duricy*, 2010-Ohio-3556, at ¶ 43, citing *Bates-Brown v. Brown,* 11th Dist. Trumbull No. 2006-T- 0089, 2007-Ohio-5203, and *Harkey v. Harkey,* 11th Dist. Lake No. 2006-L-273, 2008- Ohio-1027, ¶ 98. "Indeed, a shared parenting plan will only work if the parties agree to share by cooperating and communicating with one another." *Brandt* at ¶ 19*; see also S.H. v. C.C.,* 12th Dist. Madison No*.* CA2006-12-051*,* 2007-Ohio-4359, ¶ 31 (finding that shared parenting was not in the child's best interest given the parents' inability to cooperate and make decisions together with respect to the child); *Rengan v. Rengan,* 2d Dist. Montgomery No. 18522, 2001 WL 726800, *2 (June 29, 2001) (lack of communication between the parents would hinder the effective functioning of a

9

Case No. 2023-L-034

shared parenting plan).

{¶27} The magistrate heard the evidence and issued findings of fact and conclusions of law. In considering the child's best interest, the magistrate stated:

> The evidence clearly demonstrates a history of poor communication between Mother and Father. Though historically the poor communication has been on both sides, as of late it appears Mother has improved in her communication to Father while Father has continued to communicate with Mother in a derogatory and inappropriate manner. The testimony is replete [with] text message exchanges of Father degrading and threatening Mother. Major decisions for the minor child are only made after name calling and significant disagreement. This Hearing Office[r] does not believe Mother and Father have the ability to effectively cooperate and make decisions jointly with respect to the minor child. Additionally, there does not appear to be the encouragement of love and affection between the minor child and the other parent, especially given Father's threats of telling the minor child negative things about Mother.
>
> Father does not believe the poor communication between Mother and Father has had an effect on the minor child. This Hearing Officer believes that to be inevitable.

{¶28} It is apparent from the record that the parties were unable to make constructive mutual decisions relating to T.S. and her general well-being. Further, father's threats to malign mother publicly and tarnish T.S.'s personal perception of mother are highly problematic in the context of any parenting arrangement, let alone a shared parenting plan. The bulk of the documentary evidence indicated that father either initiated or escalated tensions between the parties. Although mother conceded she participated in the hostile exchanges, her testimony suggested she desired a less acrimonious association with father. And father seemed to minimize or be indifferent to the impact the lack of effective communication has (or would eventually have) on T.S.–these points

10

militate strongly against retaining the previously adopted shared parenting plan.

{¶29} Based upon the foregoing, the magistrate concluded that termination of the shared parenting plan is in the child's best interest. The trial court agreed with the magistrate. Upon thoroughly reviewing the record, we conclude the trial court did not abuse its discretion abuse its discretion in adopting the magistrate's decision that shared parenting was not in the best interest of T.S. Similarly, we conclude the trial court did not err in naming mother sole residential parent and legal custodian. Moreover, we further hold, in light of the unfriendly exchanges between stepmother and mother, the trial court did not err in adopting the magistrate's decision that father must ensure that stepmother has no contact with mother except for emergencies.

{¶30} Father's assignment of error lacks merit.

{¶31} For the reasons discussed in this opinion, the judgment of the Lake County Court of Common Pleas, Juvenile Division, is affirmed.

MARY JANE TRAPP, J.,

ROBERT J. PATTON, J.,

concur.

11

Case No. 2023-L-034