[Cite as *In re G.M.R.*, 2025-Ohio-5719.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## TRUMBULL COUNTY

IN THE MATTER OF:

G.M.R.

CASE NO. 2025-T-0041

Civil Appeal from the
Court of Common Pleas,
Juvenile Division

Trial Court No. 2020 JC 00043

## OPINION AND JUDGMENT ENTRY

Decided: December 22, 2025
Judgment: Affirmed

---

*Anthony G. Rossi, III*, Guarnieri & Secrest, P.L.L., 151 East Market Street, Warren, OH 44481; and *Brendan J. Keating*, Guarnieri & Secrest, P.L.L., 151 East Market Street, P.O. Box 4270, Warren, OH 44482 (For Appellee Suzette Romig).

*John H. Chaney, III*, Daniel Daniluk, L.L.C., 1129 Niles Cortland Road, S.E., Warren, OH 44484 (For Appellant Henry Miller).

*Mark C. Cervello*, 52 Townsend Avenue, Girard, OH 44420 (Guardian ad Litem).

MATT LYNCH, J.

{¶1} Appellant, Henry Miller ("Father"), appeals the judgment of the Trumbull County Court of Common Pleas, Juvenile Division, granting the motions filed by appellee, Suzette Romig ("Mother") to terminate the parties' shared parenting plan ("the plan") for their minor child, G.M.R. (d.o.b. 3/16/16), and to modify Father's child support. For the following reasons, we affirm.

{¶2} In April 2020, Father filed a complaint for paternity, custody, shared parenting, parenting time, and tax dependency exemption. In June, a guardian ad litem ("GAL") was appointed, and Father's paternity was established.

{¶3} In October 2021, the court issued an agreed judgment entry adopting the parties' plan that included Father having parenting time every other weekend from Friday at 4:30 p.m. through Monday at 8:00 p.m. In April 2022, the magistrate found Father's monthly child support was $159.30. Thereafter, both parties at various times filed different motions to terminate visitation and/or the plan, raising safety concerns and communication issues.

{¶4} Relevant to this appeal, in November 2023, Mother filed a "Motion to Terminate Shared Parenting Plan and Increase Child Support," in which she contended the plan was no longer in the best interest of G.M.R. and child support should be increased retroactive to January 1, 2021. In turn, Father filed a "Request for Modifications to Shared Parenting Plan," contending the plan is in the best interest of G.M.R. and should be maintained. Father requested to: (1) change the exchange location because both he and Mother had moved since the plan's adoption, (2) expand his parenting time by changing the holiday schedule to the schedule set forth in the court's standard visitation schedule, and (3) expand his parenting time for additional time and overnights because the current schedule precluded Father from seeing G.M.R. for ten days at a time.

{¶5} The GAL filed his report and recommendation, and the magistrate conducted an in camera interview with G.M.R. A hearing on the parties' motions followed on August 30 and December 4, 2024. Mother, Father, and the GAL testified, and the parties submitted evidence, including text exchanges.

{¶6}   Mother testified she had a $0 income in 2021 and 2022 because her husband could support her while she cared for her four minor children (including G.M.R.). In 2023, after starting a new job, she earned $11,483, and she currently earns $14/hour and works 40 hours/week.  Mother has no childcare or health insurance expenses.  Both Mother and her husband have medical marijuana cards.  She uses marijuana for her migraines, but always at night and never around the children.  On one occasion, Mother's husband (then fiancé) overdosed on an illegal substance when she and the children were not on the property.  She found him unresponsive and called 9-1-1.  Ultimately, he underwent treatment and is maintaining his sobriety.

{¶7}   Mother wanted the parenting plan changed to Father returning G.M.R. on Sundays because Father was not giving G.M.R. his epilepsy medication and G.M.R. was not completing his homework.  She did not want Father to have extended weekends or alternating weeks of parenting time in the summer.  Mother further testified the parties have no ability to communicate and have hostile exchanges where G.M.R. is exposed to Father's offensive language.  Further, Father interferes with her phone calls with G.M.R., refuses to communicate with her, and refuses to take G.M.R. to his extracurricular activities during his parenting time (all of which she pays for).  Lastly, Father took G.M.R. to a neurologist for a second opinion of G.M.R.'s epilepsy diagnosis that involved a three-day hospitalization stay for testing without consulting Mother or telling her about it.  Father also gave G.M.R. a toxicology test after Mother's husband overdosed.  Around that period, Father stopped giving G.M.R. his epilepsy medication.  Mother also complained of Father's unsafe activities with G.M.R., in part due to G.M.R.'s epilepsy.  These activities included G.M.R. riding on a motorcycle without a helmet, hunting from a 15-foot tree

Case No. 2025-T-0041

stand, fishing without a life jacket, walking back to Father's house unattended, and being left alone in the house while Father was hunting.

{¶8}    Father testified he is the owner and operator of a truck he is lease-purchasing for $500/week ($26,000 a year).  On his 2023 tax form, Father listed his gross receipts as $101,457, and profits for the year as $12,000.  He previously had a trucking job where he earned $65,000 a year.  He quit that job because he did not have a good relationship with the owner, who was an alcoholic.  Father admitted he is not making enough money and is "going broke."  He has been using his savings account and inheritance and has borrowed money from family to help pay his bills.  Father does not want to work with other trucking companies because of their restrictions and inflexibility, he cannot have passengers, and he does not want to use electronic logbooks because they are "unconstitutional."  Father acknowledged he is delinquent on paying child support because he did not work for a few weeks when he took G.M.R. for testing and to perform maintenance on his truck.

{¶9}    Father further testified his United States Department of Transportation truck registration currently prohibits passengers, but he has taken G.M.R. with him in the past.  Father clarified that while transporting passengers is prohibited, it does not mean he cannot have passengers riding with him.  He does not respond to Mother on Family Wizard (a court-based messaging application) because Mother is argumentative.  Father feels he cannot make joint decisions with Mother because she refuses to and/or does not give him the option.  He believes there is no reason to communicate with Mother "if he can talk to his son."  Mother and Father currently live 62 miles apart from each other.  Father is willing to drive G.M.R. to his extracurricular activities if the activity is not far

Case No. 2025-T-0041

away. He has not let G.M.R. ride his all-terrain vehicle or dirt bike since G.M.R.'s epilepsy diagnosis and Mother raised the issue. Father reviewed the type of gun he purchased for G.M.R. for when they go hunting and how he stores his guns in a gun safe.

{¶10} Father also testified he does not believe his son has epilepsy because Mother is not truthful and G.M.R. was diagnosed right after Mother's husband overdosed and Father filed for emergency custody. He never saw G.M.R. have a seizure, although Mother testified she sent him a video of G.M.R. experiencing one. Based on the advice he received from the Ashtabula County Sheriff's Office, Father did not tell Mother about the neurologist appointments and testing. Prior to the testing, after Father told the neurologist G.M.R.'s heart rate races after he is administered his epilepsy medication and based on that neurologist's advice, he stopped giving G.M.R. his medication. Following the testing, the neurologist put G.M.R. on the same medication at the same dose as G.M.R.'s original neurologist. Thus, at the time of the first hearing, G.M.R. had two ongoing treatment plans from two different neurologists who were prescribing the same medication at the same dose without knowledge of the other. Father testified he was satisfied G.M.R. should be given his epilepsy medication for "now, until we go in on the 22 of November for his third-month checkup" with Father's neurologist. Mother gives Father G.M.R.'s medication in unlabeled syringes with no prescription bottle. This concerns Father because if he were pulled over in his vehicle with syringes filled with an unknown medication he could lose his trucking license. Father also requested the doctor give G.M.R. a toxicology exam because he was concerned about the possibility of illegal drugs in Mother's home following her husband's overdose.

Case No. 2025-T-0041

{¶11} The GAL testified to his investigation, report, and recommendation. The GAL testified that the parties "detest each other" and cannot get along, even when exchanging the child for parenting time. The parties' inability to work together has been occurring since the "inception of the case." Further, disparate parenting styles of Father and Mother exacerbate the conflict. The GAL reviewed the issues raised by Mother and the responses of Father and G.M.R. He concluded Mother's safety concerns were inaccurate. The GAL recommended maintaining the plan, notwithstanding the parties' inability to communicate and the hostile conflict, because G.M.R. is happy with the existing schedule and enjoys spending time with Father.

{¶12} In January 2025, the magistrate issued a thorough decision, reviewing the testimony and evidence presented at the hearing, including the GAL's report and recommendation.

{¶13} The magistrate outlined each best-interest factor set forth in R.C. 3109.04(F)(1), examining the parties' wishes; the in camera interview with G.M.R. and his wishes and concerns; G.M.R.'s relationship with his stepfather and siblings; G.M.R.'s performance in school; and the mental and physical health of the parties, including mother's asthma and use of medical marijuana for migraines. The magistrate found it appeared both parties would abide by the court's schedule despite their animosity; Father has an arrearage of accumulated child support; there was no evidence of abuse, neglect, or domestic violence; there was no evidence of continuous and willful denials of parenting time; and both parents live in Ohio.

{¶14} The magistrate also outlined each best-interest factor set forth in R.C. 3109.04(F)(2), finding the parties have a confrontational relationship with no ability to

Case No. 2025-T-0041

communicate and cooperate; Father testified he will not attempt to communicate or cooperate with Mother; neither party is able to encourage the sharing of love and affection for the other parent; and there was no evidence of abuse, domestic violence, or kidnapping by either parent. The parents live approximately one hour from each other, and Father lives approximately one hour from G.M.R.'s school. The GAL recommended the parties maintain their current schedule and the shared parenting plan.

{¶15} The magistrate found Mother was, and Father remains, voluntarily underemployed. Since Father had a job in 2021 earning $65,000/year, the magistrate determined $65,000 should be the amount of potential income imputed to him for purposes of calculating child support.

{¶16} The magistrate was convinced shared parenting "is not working and does not work for the parties." The parents act independently of each other with no consultation or cooperation, the parties clearly do not care about the feelings or opinions of the other parent in making decisions, and Mother notified the GAL about issues as they arose instead of notifying Father. Without the GAL, those issues would have gone unresolved. Since the plan was entered, Father moved a significant distance away, and the parents need to continue exchanging G.M.R. for visitation in a public place due to their hostility and conflict.

{¶17} The magistrate recommended ordering the following: (1) Mother's motion to terminate the shared parenting plan is granted, with Mother having legal custody; (2) Father's request for modifications to the plan is denied; (3) Father's companionship shall be, in relevant part, every other weekend from Friday at 6:00 p.m. to Sundays at 6:00 p.m. and Wednesdays from 4:30 p.m. until 8:00 p.m.; (4) the parties will exchange

Case No. 2025-T-0041

for visitation at the Roaming Shores Police Department in Roaming Shores, Ohio; and (5) Father's monthly child support shall be $676.40, cash medical support $30.36, and 2% processing charge of $14.14 for a total of $720.90.

{¶18} The trial court adopted the magistrate's decision the same day. Father filed objections, contending the magistrate failed to properly apply the factors set forth in R.C. 3109.04(F)(1) and (F)(2), and wrongly found lack of communication is an issue instead of attributing their differences to disparate parenting styles. Father further contended the magistrate made multiple errors in determining his child support because the magistrate ignored his income over the past few years, failed to consider the impact of his work schedule on his parenting schedule, failed to average his income over the past five years, and ignored his testimony regarding how he currently pays for expenses.

{¶19} In May 2025, after conducting an independent review of Father's objections, the hearing transcript, and the magistrate's decision, the trial court overruled Father's objections and affirmed its adoption of the magistrate's decision.

{¶20} Father timely appealed and raises two assignments of error for our review:

{¶21} "[1.] Whether the trial court erred and/or abused its discretion in terminating the Shared Parenting Plan, where the applicable law and relevant facts support that both Appellee and Appellant are competent, involved, and good parents to the minor child, the minor child and Guardian Ad Litem both wanted everything to remain the same, and the Shared Parenting Plan should have been preserved for the benefit of the minor child.

{¶22} "[2.] The trial court erred in completely ignoring the relevant testimony and evidence concerning Appellant's income for child support purposes and instead utilizing

Case No. 2025-T-0041

the income, which is not currently earned by Appellant and is not even close to any income earned by Appellant over the last 5 years."

**Standard of Review**

{¶23} This court has held that decisions involving the allocation of parental rights and responsibilities are accorded great deference on review. *See In re K.R.*, 2011-Ohio-1454, ¶ 28 (11th Dist.), citing *Miller v. Miller*, 37 Ohio St.3d 71, 74 (1988). "Thus, any judgment of the trial court involving the allocation of parental rights and responsibilities will not be disturbed absent a showing of an abuse of discretion." *Id.*, citing *Davis v. Flickinger*, 77 Ohio St.3d 415, 418 (1997). We also review a judgment of the trial court adopting the decision of its magistrate for an abuse of discretion. *Id.* In addition, an appellate court reviews the trial court's termination of a shared parenting plan and modification of child support orders for an abuse of discretion. *Id.*; *Booth v. Booth*, 44 Ohio St.3d 142, 144 (1989). An abuse of discretion is the "'failure to exercise sound, reasonable, and legal decision-making.'" *State v. Beechler*, 2010-Ohio-1900, ¶ 62 (2d Dist.), quoting *Black's Law Dictionary* (8th Ed. 2004).

{¶24} The highly deferential abuse of discretion standard is particularly appropriate when reviewing the allocation of parental rights and responsibilities since the trial judge is in the best position to determine the credibility of the witnesses, *see In re K.R.* at ¶ 30, and there "'may be much that is evident in the parties' demeanor and attitude that does not translate well to the record.'" *Id.*, quoting *Wyatt v. Wyatt*, 2005-Ohio-2365, ¶ 13 (11th Dist.). A reviewing court is not to reweigh the evidence, "but must ascertain from the record whether there is some competent evidence to sustain the findings of the trial court." *Id.*, quoting *Clyborn v. Clyborn*, 93 Ohio App.3d 192, 196 (3d Dist.1994).

Case No. 2025-T-0041

**Termination of Shared Parenting Plan**

{¶25} In his first assignment of error, Father contends the trial court failed to correctly analyze the factors set forth in R.C. 3109.04(F)(1) and (F)(2), and ignored his wishes and those of G.M.R. and the GAL.  Father contends the testimony and evidence presented at the hearing revealed that both parents are competent, involved, and good parents, and even if there is animosity, he and Mother can co-parent effectively.

{¶26} Pursuant to R.C. 3109.04(E)(2)(c),

> The court may terminate a prior final shared parenting decree that includes a shared parenting plan approved under division (D)(1)(a)(i) of this section upon the request of one or both of the parents or whenever it determines that shared parenting is not in the best interest of the children. The court may terminate a prior final shared parenting decree that includes a shared parenting plan approved under division (D)(1)(a)(ii) or (iii) of this section if it determines, upon its own motion or upon the request of one or both parents, that shared parenting is not in the best interest of the children.

{¶27} In terminating a shared parenting plan, the court must find that the plan is no longer in the best interest of the child.  *Simpson v. Genovese*, 2023-Ohio-3532, ¶ 11 (11th Dist.).

{¶28} "The non-exhaustive, best-interest factors found in R.C. 3109.04(F)(1) include: (a) the wishes of the child's parents regarding the child's care; (b) the wishes or concerns of the child as expressed to the court; (c) the child's interaction and interrelationship with [his] parents and any other person who may significantly affect the child's best interest; (d) the child's adjustment to his home, school, and community; (e) the mental and physical health of all persons involved; (f) the parent more likely to honor and facilitate visitation and companionship rights approved by the court; (g) whether either parent has failed to make all child support payments; (h) whether either parent previously

Case No. 2025-T-0041

has been convicted of or pleaded guilty to certain criminal offenses or whether either parent has perpetrated child abuse or neglect; (i) whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent his or her right to visitation in accordance with an order of the court; and (j) whether either parent has established a residence, or is planning to establish a residence, outside this state." *Id.* at ¶ 12.

{¶29} "Moreover, best interest factors related to shared parenting include: the ability of the parents to cooperate and make decisions together relating to the child; the ability of the parents to encourage the sharing of love, affection, and contact between the child and the other parent; any history of, or potential for, child abuse, spousal abuse, other domestic violence, or kidnapping by either parent; the geographic proximity of the parents to one another as that proximity relates to the practical considerations of shared parenting; and the recommendation, if any, of the guardian ad litem. R.C. 3109.04(F)(2)(a)-(e)." *Id.* at ¶ 13.

{¶30} Although Father disagrees with the magistrate's analysis and the weight to be given to each factor, the magistrate's consideration of each factor is supported by competent, credible evidence. "'The trial court "has discretion in determining which factors are relevant," and "each factor may not necessarily carry the same weight or have the same relevance, depending upon the facts before the trial court."'" *Sharp v. Richmond*, 2025-Ohio-2926, ¶ 17 (11th Dist.), quoting *Krill v. Krill*, 2014-Ohio-2577, ¶ 29 (3d Dist.), quoting *Brammer v. Brammer*, 2013-Ohio-2843, ¶ 41 (3d Dist.). Further, "[a] trial court is not limited to the listed factors in R.C. 3109.04(F), but may consider any other relevant factors in making a determination of child custody." *Brammer* at ¶ 41.

Case No. 2025-T-0041

{¶31} The evidence at the hearing – including Father's testimony – belies Father's contentions the parties can co-parent effectively despite their lack of communication and communication is not the real issue. Father took G.M.R. to a second neurologist without Mother's consent or knowledge. This included a three-day hospital stay and two separate plans of treatment and prescriptions. Father does not want to participate in G.M.R.'s extracurricular activities if they occur far from his home, Father and Mother live far from each other, Father does not see the point in communicating with Mother or making joint decisions, and Mother and Father are openly hostile when they exchange G.M.R. for parenting time. Fundamentally, "'the failure of parents to communicate or cooperate effectively is grounds for terminating an existing shared parenting plan.'" *Simpson*, 2023-Ohio-3532, at ¶ 26 (11th Dist.), quoting *Brandt v. Brandt*, 2012-Ohio-5932, ¶ 19 (11th Dist.), citing *Duricy v. Duricy*, 2010-Ohio-3556, ¶ 43 (11th Dist.), citing *Bates-Brown v. Brown*, 2007-Ohio-5203 (11th Dist.) and *Harkey v. Harkey*, 2008-Ohio-1027, ¶ 98 (11th Dist.). "'Indeed, a shared parenting plan will only work if the parties agree to share by cooperating and communicating with one another.'" *Id.*, quoting *Brandt* at ¶ 19; *see also S.H. v. C.C.*, 2007-Ohio-4359, ¶ 31 (12th Dist.) (finding shared parenting was not in child's best interest given parents' inability to cooperate and make joint decisions with respect to child); *Rengan v. Rengan*, 2001 WL 726800, *2 (2d Dist. June 29, 2001) (lack of communication between parents hinders effective functioning of shared parenting plan); *In re Krejci*, 2024-Ohio-1529, ¶ 26 (11th Dist.).

{¶32} It is also apparent the magistrate considered the GAL's testimony, report, and recommendation. The GAL acknowledged Mother and Father "detest" one another; they "cannot communicate with each other civilly"; Father should not have taken G.M.R.

to a second neurologist without Mother's knowledge or consent; and they have "disparate parenting styles."  The GAL further stated, "As a result, allegations have been and continue to be hurled back and forth, and no investigation can verify these claims unless a guardian is 'on call 24/7' and personally in the part[ies]' presence."  The GAL appeared to heavily weigh G.M.R.'s wishes, noting G.M.R. expressed he wanted to spend "equal time" with both parents, he is happy with the current schedule, and he enjoys spending time with his Father, before recommending the plan be maintained.  The trial court is not bound to follow the GAL's recommendation.  As the Tenth District aptly stated in *In re R.N.*, 2004-Ohio-4420, ¶ 55 (10th Dist.), "while . . . guardians ad litem play important roles in child custody matters and in evaluating the interest of children, their recommendations are not binding upon a trial court.  The trial court must be free to evaluate all of the evidence and determine, based upon the entire record, the children's best interest."

{¶33}  In sum, Father fails to demonstrate the trial court abused its discretion in adopting the magistrate's decision to terminate the parties' shared parenting plan.

{¶34}  Father's first assignment of error is without merit.

### Child Support

{¶35}  In his second assignment of error, Father contends the trial court ignored his testimony and evidence concerning his income.  More specifically, Father contends the court did not utilize his tax records from the past four years; failed to consider the impact of his parenting schedule on his work schedule; erred in using an income of $65,000, which he has not made since 2021; failed to average his income over the past few years; and made no reference as to how he has paid his monthly obligations in the past year.

{¶36} "In any action in which a court child support order is issued or modified, . . . the court or agency shall calculate the amount of the parents' child support and cash medical support in accordance with the basic child support schedule, the applicable worksheet, and the other provisions of Chapter 3119. of the Revised Code."  R.C. 3119.02.  "'When calculating child support, the trial court must first determine the annual gross income of each parent,' including the gross and potential income 'of a parent the court determines to be voluntarily unemployed or underemployed.'"  *Lake Cty. Dept. of Job & Family Servs. v. Trivisonno*, 2023-Ohio-2255, ¶ 16 (11th Dist.), quoting *Lake Cty. Dept. of Job & Family Servs. v. Bailey*, 2020-Ohio-986, ¶ 25 (11th Dist.); *Rock v. Cabral*, 67 Ohio St.3d 108, 111 (1993).

{¶37} "First, the court must determine that a parent's unemployment or underemployment was voluntary.  R.C. 3119.01(C)(1[8]).  Second, the court must determine what the parent would have earned if fully employed, using the criteria enumerated in R.C. 3119.01(C)(1[8])(a)(i) through (xi)."  *Ayers v. Ayers*, 2024-Ohio-1833, ¶ 14.  "[T]he substance of the court's determination of a parent's voluntary [underemployment], as well as the substance of its decision to impute potential income to that parent, are factual questions that may not be disturbed on appeal absent an abuse of discretion."  *Id.* at ¶ 21, citing *Rock* at 112.

{¶38} "Potential income" includes income imputed to the parent that would have been earned if the court determines the parent is "voluntarily unemployed or voluntarily underemployed."  R.C. 3119.01(C)(18)(a).  "Imputed income that the court or agency determines the parent would have earned if fully employed" is determined from criteria including, inter alia, the parent's prior employment experience, education and training; the

Case No. 2025-T-0041

parent's physical or mental disabilities; availability of employment and wages in the area where the parent resides; the ability of the parent to earn the imputed income; the age and special needs of the child; increased earning capacity due to experience; and any other relevant factor. R.C. 3119.01(C)(18)(a)(i)-(xi). This court has observed "that while consideration of the R.C. 3119.01(C)(18) factors is required to impute income, *Huth v. Huth*, 2019-Ohio-2970, ¶ 33 (11th Dist.), it has been held that 'the statute does not require evidence be presented as to each factor before the court may impute income.' *Yenni v. Yenni*, 2022-Ohio-2867, ¶ 32 (8th Dist.); *Chapman v. Chapman*, 2007-Ohio-1414, ¶ 12 (10th Dist.) (the law does not require that 'evidence must be presented as to each factor in order for the trial court to impute income')." *In re C.R.*, 2024-Ohio-2954, ¶ 38 (11th Dist.).

{¶39} It is obvious the court considered Father's testimony and the evidence of his income that he presented at the hearing. Father testified he is "going broke" working as a contractor, he would be earning more if he had not quit his previous job where he earned $65,000 a year (because he did not like the schedule and his former employer was an "alcoholic"), and he is aware there are trucking positions that make $100,000 to $150,000 a year. He explained, "It's not about the money. It's about me being able to do what I want when I want." When the magistrate asked Father why he has this job when he is not earning enough money and despite the availability of other trucking jobs, Father replied, "Well, it's just that sometimes you got to live off your bank account for a while." By Father's own admissions, he is voluntarily choosing to be underemployed. As the Ohio Supreme Court has observed, "voluntarily" means "'[d]one by design or intention, intentional, proposed, intended, or not accidental. Intentionally and without coercion.'"

Case No. 2025-T-0041

*Rock*, 67 Ohio St.3d at 111, fn. 2, quoting *Black's Law Dictionary* (6th Ed. 1990). *See also In re C.R.* at ¶ 32 (despite Mother's LPN certification, she was "choosing not to work currently" and "there was no evidence that she could not work," thus showing the voluntary nature of Mother's unemployment).

{¶40} Thus, there is competent and credible evidence supporting the magistrate's findings that Father is voluntarily unemployed and that an income of $65,000 should be imputed because it is an amount he earned in the past and has the ability to earn.

{¶41} Father's second assignment of error is without merit.

{¶42} The judgment of the Trumbull County Court of Common Pleas, Juvenile Division, is affirmed.

JOHN J. EKLUND, J.,

SCOTT LYNCH, J.,

concur.

Case No. 2025-T-0041

# JUDGMENT ENTRY

For the reasons stated in the opinion of this court, appellant's assignments of error are without merit. It is the judgment and order of this court that the judgment of the Trumbull County Court of Common Pleas, Juvenile Division, is affirmed.

Costs to be taxed against appellant, Henry Miller.

_____
JUDGE MATT LYNCH

_____
JUDGE JOHN J. EKLUND,
concurs

_____
JUDGE SCOTT LYNCH,
concurs

---

**THIS DOCUMENT CONSTITUTES A FINAL JUDGMENT ENTRY**

A certified copy of this opinion and judgment entry shall constitute the mandate pursuant to Rule 27 of the Ohio Rules of Appellate Procedure.

Case No. 2025-T-0041